938 So.2d 905 (2006)
Tina DAVIS, Appellant
v.
The CLARION-LEDGER and The Travelers Insurance Company, Appellee.
No. 2005-WC-01510-COA.
Court of Appeals of Mississippi.
October 3, 2006.
*906 Dennis Harmon, Columbus, attorney for appellant.
Ernest Russell Turner, attorney for appellee.
Before KING, C.J., SOUTHWICK and IRVING, JJ.
KING, C.J., for the Court.
¶1. The Mississippi Workers' Compensation Commission (Commission) found that Tina Davis was an independent contractor, and denied her claim for workers' compensation benefits. Upon appeal, the Lowndes County Circuit Court affirmed the denial of benefits. Davis appeals to this Court raising the following issues:
I. Whether a person who is paid a salary by a newspaper company to deliver papers is an employee *907 within the worker's compensation statute.
II. What is the proper calculation of damages when the Commission does not reach the benefits issue and the defendant offers no counter evidence on injuries.
Finding reversible error in the first issue, this Court reverses and remands this case to the Mississippi Workers' Compensation Commission for a determination of benefits.

FACTS
¶2. In 1999, Davis entered into an agreement with The Clarion-Ledger to sell newspapers. Under that agreement, Davis purchased the newspapers from The Clarion-Ledger, and within a specified sales territory, placed some in coin operated newspaper racks and placed the others in local businesses for in-store sale. Davis collected and retained the money from the newspaper racks and the in-store sales. Davis' compensation was the difference between the price which she paid for her inventory of newspapers and the retail price paid by consumers. This contractual arrangement continued until January 2001, when Davis informed The Clarion-Ledger District Manager Danny Tharp of her intent to terminate her contract with The Clarion-Ledger because she was not making enough money. In response to Davis' concerns, Tharp requested that Davis continue to service this territory until a replacement could be found. Tharp proposed to pay Davis $40 per day for her services, and to give her a $5 per day gasoline allowance. Under the new agreement, Davis would continue to transport the newspapers and collect the unsold newspapers in the same fashion to which she was accustomed, but she would not have to purchase the newspapers, nor would she collect the money from the machines. Davis accepted this offer. Three days later, Tharp removed Davis' locks from the money boxes on the newspaper racks and replaced them with The Clarion-Ledger's locks.
¶ 3. On February 7, 2001, Davis had worked approximately two weeks under the new agreement. After having restocked a newspaper rack, Davis stepped off of a curb and injured her ankle. She was taken by ambulance to the hospital, where it was revealed that she had suffered a displaced trimalleolar ankle fracture. Davis underwent an operation on her ankle that day. Due to recurrent infection, Davis underwent subsequent ankle operations on April 4 and May 8, 2001. In addition to her operations, Davis also underwent physical therapy. On July 13, 2001, her doctor determined that Davis had reached maximum medical improvement.
¶ 4. On October 12, 2001, Davis filed her petition to controvert with the Commission. On December 27, 2001, The Clarion-Ledger filed its answer, asserting that Davis was an independent contractor. On January 29, 2003 the administrative judge held that Davis was an independent contractor, and denied her claim. The Commission affirmed the order of the administrative law judge. Davis then appealed to the Lowndes County Circuit Court, which affirmed the Commission's order on July 28, 2005.

ANALYSIS
¶ 5. Mississippi Workers' Compensation Commission cases are reviewed under the substantial credible evidence standard. Shelby v. Peavey Elecs. Corp., 724 So.2d 504, 506(¶8) (Miss.Ct.App.1998). However, when the issue is one of law rather than fact, we employ a de novo standard of review. Id. Our supreme court has stated that the issue of whether *908 an individual is an employee or independent contractor is an issue of law. Id.
Pursuant to Miss.Code Ann. Section 71-3-3(r) (2001):
"Independent contractor" means any individual, firm or corporation who contracts to do a piece of work according to his own methods without being subject to the control of his employer except as to the results of the work, and who has the right to employ and direct the outcome of the workers independent of the employer and free from any superior authority in the employer to say how the specified work shall be done or what the laborers shall do as the work progresses, one who undertakes to produce a given result without being in any way controlled as to the methods by which he attains the result.
Davis asserts that The Clarion-Ledger clearly controlled the methods by which she maintained the newspaper racks primarily by changing the locks on the racks. The Clarion-Ledger denies that changing the locks on the racks, or having Tharp collect the money from the racks amounts to exercising control over the details of Davis' daily work activities.
¶ 6. The supreme court has adopted two tests to assist in determining whether an individual is an employee or an independent contractor. The "control test" consists of the following factors, "(1) direct evidence of right or exercise of control; (2) method of payment; (3) the furnishing of equipment; and (4) the right to fire." Shelby, 724 So.2d at 507(¶13).
¶ 7. Davis' testimony before the administrative judge revealed that during the two weeks in which she performed under the new agreement, no one at The Clarion-Ledger told her how to run her route, nor had she ever received a performance evaluation. However, it is the right to control, rather than the exercise of that right, which is decisive. Id. The record contains the following evidence regarding The Clarion-Ledger's right to control. Under the new arrangement, Davis no longer purchased an inventory of newspapers to sell. Instead, The Clarion-Ledger provided the newspapers to Davis, who merely filled the newspaper racks and transported newspapers to businesses for in-store sales. Davis' locks were taken off of the money boxes on the newspaper racks and replaced with The Clarion-Ledger's locks. Davis no longer collected the money from the newspaper racks. Tharp became responsible for collecting the money from newspaper rack sales. The changing of the locks limited Davis' access to the newspaper racks. Therefore, The Clarion-Ledger began providing Davis with quarters as her only means to open and stock the newspaper racks, while preventing her access to the money contained in the coin boxes. Davis also testified that she and Tharp had discussed employee policies and procedures. These facts tend to illustrate The Clarion-Ledger's right to control the details of Davis' work. The method of payment factor clearly favors a finding of employment since Davis was to be paid a salary of $40 dollars per day regardless of the number of papers actually sold. As for the furnishing of equipment, although Davis furnished her own automobile, The Clarion-Ledger furnished her gasoline[1], the newspapers, locks on the machines, and quarters to open the machines. Accordingly, this factor also favors a finding of employment. Finally, The Clarion-Ledger conceded that either Davis or The Clarion-Ledger could have terminated the relationship at any time. An application of *909 the four factors of the control test indicates that Davis was an employee rather than an independent contractor.
¶ 8. An application of the "nature of the work test" also indicates that Davis was an employee of The Clarion-Ledger. The factors to be considered in the "nature of the work test" are,
the character of the claimant's work or businesshow skilled it is, how much of a separate calling or enterprise it is, to what extent it may be expected to carry its own accident burden and so onand its relation to the employer's business, that is, how much it is a regular part of the employer's regular work, whether it is continuous or intermittent, and whether the duration is sufficient to amount to the hiring of continuing services as distinguished from contracting for the completion of a particular job.
Boyd v. Crosby Lumber & Mfg. Co., 250 Miss. 433, 444, 166 So.2d 106, 110 (1964) (quoting 1 Larson, Workmen's Compensation Law, § 43.52). Clearly, no special skill is required in the delivery of newspapers. Also, delivery of the newspapers to the general public is an integral part of The Clarion-Ledger's function. Finally, Davis' duties were continuous as she transported the newspapers seven days a week.
¶ 9. It is undisputed that prior to the January 2001 Davis-Tharp meeting, Davis was an independent contractor. During that time, she purchased newspapers from The Clarion-Ledger and resold them to the general public via the newspaper racks and in-store sales. Her compensation depended on the amount of newspapers actually sold to the public. After Davis and Tharp terminated that agreement, Davis no longer purchased the newspapers, and was therefore transporting products solely owned by The Clarion-Ledger for a salary. The Clarion-Ledger controlled the details of her work by exercising total control over the newspaper racks. For all of the foregoing reasons, we find that Davis was an employee of The Clarion-Ledger.
¶ 10. Because we find the first issue to be dispositive, we decline to address the second issue.
¶ 11. THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] Davis never actually received payment, including the gasoline allowance, after the injury. Nevertheless, the agreement was that she would be provided the gasoline subsidy.