GRIFFIS, P.J.,
for the Court:
¶ 1. The Mississippi Workers’ Compensation Commission ruled that Lucious Graves was injured during the course and scope of his employment with Southeastern Auto Brokers. As a result, the Commission ordered Southeastern to pay Graves’s workers’ compensation benefits. Southeastern challenges the Commission’s ruling, and argues: (1) Graves was an independent contractor, not an employee, and (2) even if Graves qualified as an employee, workers’ compensation laws did not apply. We find no error and affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. In 2006, Graves started to work for Nick Crechale. Crechale owned and operated three used-car businesses, Southeastern Auto Brokers, Inc., Southeastern J & P Auto Brokers, LLC, and Discount Car Lot, Inc. (Unless specifically noted, all three entities will be referred to as “Southeastern.”) Graves’s employment primarily included auto-detailing work. Graves also performed odd jobs around the auto lots, such as operating heavy equipment and hauling trash. He also worked on Crec-hale’s farm.
¶ 3. On November 10, 2010, Graves fell from a trailer while offloading vehicles for Southeastern. His little (or “pinky”) finger was amputated. Graves underwent surgery and treatment for the amputation. However, due to his temporary disability, Graves was not able to return to work for several months. Graves attained maximum medical improvement on May 18, 2011.
¶ 4. Graves sought to have Southeastern pay for the medical bills and lost wages during the time of his disability. Southeastern refused. On September 22, 2011, Graves filed a petition to controvert with the Commission.
¶ 5. Southeastern responded and argued that Graves was not an employee of Southeastern. Southeastern claimed Graves was an independent contractor. Southeastern also claimed that the Mississippi Workers’ Compensation Act did not apply because Southeastern did not employ five or more employees as required.
¶ 6. After a hearing, Administrative Judge Robert J. Arnold III ruled for Graves. Judge Arnold found that Graves was an employee, not an independent contractor. Judge Arnold also found Southeastern regularly employed five or more employees, which subjected it to workers’ compensation laws. Judge Arnold’s order, dated August 29, 2013, required Southeastern pay Graves’s medical bills and compensation for his temporary disability, from *1015 the time of the accident through his maximum medical improvement.
¶7. Southeastern appealed Judge Arnold’s decision. The Commission adopted Judge Arnold’s findings, and made additional findings. Based on its findings, the Commission affirmed the order. Southeastern has appealed the Commission’s decision.
STANDARD OF REVIEW
¶ 8. “The decision of the Commission will be reversed only if it is not supported by substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law.” Concert Sys. USA, Inc. v. Weaver, 33 So.3d 1186, 1188 (¶ 10) (Miss.Ct.App.2010) (citing Weatherspoon v. Croft Metals, Inc., 853 So.2d 776, 778 (¶ 6) (Miss.2003)). When the issue involves a question of law, however, the review is de novo. Davis v. Clarion-Ledger, 938 So.2d 905, 907 (¶ 5) (Miss.Ct.App.2006) (citing Shelby v. Peavey Elecs. Corp., 724 So.2d 504, 506 (¶ 8) (Miss.Ct.App.1998)).
ANALYSIS

I. Whether the administrative judge correctly determined Graves ivas an employee rather than an independent contractor.

¶ 9. Southeastern claims that Graves did not qualify as an employee. “[The Mississippi Supreme Court] has stated that the issue of whether an individual is an employee or independent contractor is an issue of law.” Id. at 907-08 (¶ 5). However, “[i]f there is substantial evidence to support the Commission, absent an error of law, this Court must affirm. On the other hand, where the Commission has misapprehended the controlling legal principles, we will reverse, for our review in that event is de novo.” Shelby, 724 So.2d at 506 (¶ 8) (quoting Smith v. Jackson Constr. Co., 607 So.2d 1119, 1125 (Miss.1992)). Therefore, absent any misapplication of law, the review remains one for substantial evidence.
¶ 10. Under the Workers’ Compensation Act, an employee is “any person ... in the service of an employer under any contract of hire or apprenticeship, written or oral, express or implied, provided that there shall be excluded therefrom all independent contractors.” Miss. Code Ann. § 71—3—3(d) (Rev.2011). In contrast, an independent contractor is defined as:
[A]ny individual, firm[,] or corporation who contracts to do a piece of work according to his own methods without being subject to the control of his employer except as to the results of the work, and who has the right to employ and direct the outcome of the workers independent of the employer and free from any superior authority in the employer to say how the specified work shall be done or what the laborers shall do as the work progresses, one who undertakes to produce a given result without being in any way controlled as to the methods by which he attains the result.
Miss.Code Ann. § 71-3-3(r) (Rev.2011). The determination of whether one is an employee or an independent contractor rests in well-settled law.
¶ 11. “This Court has acknowledged that a contract of hire is required to meet the definition of ‘employee’ as defined by [the] Mississippi Code.” Hugh Dancy Co. v. Mooneyham, 68 So.3d 76, 80 (¶ 8) (Miss.Ct.App.2011). “The elements of a contract for hire are mutual consent, consideration, and right of control.” Mathis v. Jackson Cnty. Bd. of Sup’rs, 916 So.2d 564, 569 (¶ 12) (Miss.Ct.App.2005) (citing Walls v. N. Miss. Med. Ctr., 568 So.2d 712, 715 (Miss.1990)). A contract for *1016 hire can either be express or implied. Id. (citing Miss.Code Ann. § 71—3—3(d)).
¶ 12. Mutual consent means a “meeting of the minds of both parties to a contract; the fact that each agrees to all the terms and conditions, in the same sense and with the same meaning as the others.” Id. at (¶ 13) (citing Black’s Law Dictionary, 6th ed.1991). In this case, Graves and Southeastern actually contracted for Graves to work.
¶ 13. The contract categorized Graves as an independent contractor, and though Graves stated he did not know the contract named him as an independent contractor, he did understand the contract constituted a work agreement. Even if no mutual consent occurred with regard to the exact language of the contract, a contract for hire may be implied, which allows for implied mutual consent. Therefore, Graves and Southeastern agreed on a work arrangement, and both parties consented to the agreement.
¶ 14. The second requirement for a contract for hire, consideration, forms part of this agreement between Southeastern and Graves. Consideration is “(a) an act other than a promise, or (b) a forbearance, or (c) the creation, modification or destruction of a legal relation, or (d) a return promise, bargained for and given in exchange for the promise.” Id. at (¶ 15) (citing Marshall Durbin Food Corp. v. Baker, 909 So.2d 1267, 1273 (¶ 14) (Miss.Ct.App.2005)). In this agreement, Graves promised to perform work for Southeastern, and Southeastern promised to compensate Graves through an hourly wage. Thus, Graves and Southeastern formed an agreement with adequate consideration for a contract for hire.
¶ 15. The final element, the right to control, forms the foundation of the employer-employee relationship. “The supreme court has held that ‘the traditional test of the employer-employee relationship is the right of the employer to control the details of the work.’ ” Weaver, 33 So.3d at 1189 (¶ 13) (quoting Goolsby Trucking Co. v. Alexander, 982 So.2d 1013, 1024 (¶ 31) (Miss.Ct.App.2008)). “The right of control, rather than the fact that an employer exercises that control, determines the status of parties as employer and employee for compensation purposes,” Mathis, 916 So.2d at 570 (¶ 19) (citation omitted). “The ‘control test’ consists of the following factors, ‘(1) direct evidence of right or exercise of control; (2) method of payment; (3) the furnishing of equipment; and (4) the right to fire.’ ” Davis, 938 So.2d at 908 (¶ 6) (quoting Shelby, 724 So.2d at 507 (¶ 13)).
¶ 16. The Commission found that Southeastern required Graves to work every day, and Graves exclusively worked for Southeastern. Crechale instructed Graves to maintain his hours by punching a time-card, and Graves received an hourly compensation for all work he completed for Southeastern. Graves received cash payments for additional work on Crechale’s farm and for the Crechale family.
¶ 17. Further, Southeastern provided all of the equipment and chemicals used in the tasks performed by Graves. The Commission also determined that Crechale and his sons directed Graves in which tasks to complete, and Southeastern enjoyed the right to fire Graves at any time. Based on these factors, the Commission ruled Graves was as an employee.
¶ 18. Southeastern has argued throughout this matter that other evidence weighed in favor of a finding of independent-contractor status. Southeastern pointed to the fact that Graves signed a contract declaring himself an independent contractor. Southeastern also showed that *1017 Graves received 1099 tax forms for contract work rather than W-2 forms commonly used for employees. However, the Commission ruled that Southeastern used the contract and the 1099 forms solely for tax purposes, which did not prove independent-contractor status for workers’ compensation purposes.
¶ 19. The Commission made a clear finding based upon a proper application of the law, and found that the factor of the right of control weighed in favor of treating Graves as an employee. Based on the findings of the Commission and this Court’s review, the substantial evidence supports a finding that Southeastern employed Graves as an employee rather than an independent contractor. We find the Commission’s decision, based on the proper application of law, is supported by the substantial evidence, and not arbitrary or capricious. For these reasons, we affirm the Commission’s finding of Graves’s employee status.

II. Whether Southeastern employed the requisite number of employees that would subject it to workers’ compensation laws.

¶20. Next, Southeastern claims that even if Graves acted as an employee rather than an independent contractor, Southeastern lacked the requisite number of employees that would require compliance with workers’ compensation laws. The Workers’ Compensation Act applies to Southeastern if it “[had] in service five (5) or more workmen or operatives regularly in the same business or in or about the same establishment under any contract of hire, express or implied.” Miss.Code Ann. § 71-3-5 (Rev.2011).
¶ 21. Graves argued that Southeastern regularly employed more than five individuals in 2010. Crechale countered that he did not need more than four employees to operate his regular business. Crechale also asserted that Southeastern Auto Brokers, Inc., J & P Southeastern Auto Brokers, LLC, and Discount Car Lot, Inc., operated as three distinct entities. In fact, Crechale maintained that none of the entities employed five or more workers.
¶22. However, the Commission found that the three entities operated essentially as one entity engaged in a unity of purpose, which meant employees of all three entities counted in determining the requisite number of employees for the Act. When Graves’s injury occurred, the Commission determined that Southeastern regularly employed five or more employees. Further, the Commission concluded that Crechale’s sons, Paul, Alex, and John; his daughter, Elizabeth; Nathan Griffith; Percy Jones; and Graves all worked for Southeastern at that time. Although the parties dispute whether Elizabeth regularly worked for Southeastern, the parties do not contest that John, Alex, Paul, Nathan, Percy, and Graves all worked for Southeastern.
¶ 23. Under section 71-3-5, an employee is one who is under either an express or implied contract for hire. Miss.Code Ann. § 71-3-5. A contract for hire requires mutual consent, consideration, and right of control. See Mooneyham, 68 So.3d at 80 (¶ 8); Mathis, 916 So.2d at 569 (¶ 12). Thus, Paul, Alex, and John count as employees due to implied contracts for hire. The three men worked under an agreement of compensation, which they received from a corporate account shared by all three entities. Although Paul, Alex, and John acted as executive officers, they did not have a controlling interest in the separate entities. As a result, each entity was subject to the control of Crechale.
¶ 24. Southeastern further asserts that while Crechale, Paul, Alex, and John worked for Southeastern and J & P, they *1018 were all officers of J & P, which exempted them from coverage under the Act. The Act provides an exception for executive officers of a corporation in that:
Every executive officer elected or appointed and empowered in accordance with a charter and bylaws of a corporation, other than nonprofit charitable, fraternal, cultural, or religious corporations or associations, shall be an employee of such corporation under this chapter, provided that said executive officer may reject said coverage by giving notice in writing to the carrier of this election not to be covered as an employee.
Miss.Code Ann. § 71-3-79 (Rev.2011). “While under section 71-3-79 an executive officer can elect to exclude himself from workers’ compensation insurance coverage, this exclusion must be in writing.” Harper ex rel. Harper v. Banks, Finley, White & Co. of Miss., 136 So.3d 462, 465-66 (¶ 13) (Miss.Ct.App.2014).
¶ 25. The Commission found that Southeastern employed at least five people at the time of Graves’s injury. There was no evidence that any of the officers had elected to opt out of coverage in writing, nor that there was a policy in place at all. Southeastern contends that the officers did not need to opt out because the officers served as members of a limited-liability company (LLC), which differed from the procedure for a corporation detailed in section 71-3-79.
1126. According to Southeastern, officers in an LLC must specifically opt into coverage rather than opt out. Southeastern relies on Sullivan v. Sullivan, 192 So.2d 277, 280 (Miss.1966), for this proposition. However, an LLC is an incorporated entity distinct from the partnership present in Sullivan.
¶ 27. In Weaker, this Court found that officers of a corporation who paid their house and car notes from the corporate account were employees for coverage purposes. Weaver, 33 So.3d at 1190 (¶ 16). The compensation the officers received in Weaver is analogous to the compensation in this case. Therefore, John, Alex, and Paul acted as employees of the entities similar to the officers in Weaver. Thus, each of these men counts as an employee for coverage purposes.
¶ 28. The Commission determined that Southeastern had at least five employees at the time of Graves’s injury. Finding no error, we affirm the Commission’s decision.
¶ 29. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.