# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
February 4, 2021

Lyle W. Cayce
Clerk

No. 19-60421

Shelter Mutual Insurance Company,

*Plaintiff—Appellee*,

*versus*

Double J Timber Company, Incorporated; Dorothy Johnson; Christopher Johnson; Summer Johnson; Julie Pace, *individually and as wrongful death beneficiaries of Jerry Lee Johnson, deceased*,

*Defendants—Appellants.*

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:18-CV-43

Before Stewart, Higginson, and Wilson, *Circuit Judges.*

Per Curiam:[*]

This is an insurance-coverage dispute. Shelter Mutual Insurance Company filed a complaint seeking a declaratory judgment that neither its insured, Double J Timber Company, Inc., nor Terry Johnson were entitled

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-60421

to indemnity and defense for claims pending against them in a state court wrongful death action. The district court granted Shelter's motion for summary judgment, finding the subject policy's "Employee Exclusion" provision precluded coverage. We agree with the district court and AFFIRM.

## I.

In early 2017, Jerry Johnson and his brother Terry Johnson began exclusively performing logging services for Double J, a company owned by their cousin, Jimmy Johnson. Jerry and Terry had also done work for Double J prior to 2017, as independent contractors. However, the working relationship changed after Jerry's own company, CTJ Logging, filed for bankruptcy in late 2016 and lost most of its equipment.[1] According to Jimmy's deposition testimony, after filing for bankruptcy, Jerry asked Jimmy, "Will you give me a job?" And Jimmy said, "Yes, I will." Jimmy explained:

> Well, Jerry was a friend of mine, a cousin, and he had lost his equipment. And he was wanting to work, and that's what I done. I got rid of some men and told Jerry I'd rather have you take it over and run it, and that's what he done.

So Jerry became a foreman for Double J. And Terry, who had always worked for Jerry, also began working for Double J following CTJ Logging's bankruptcy.

After their transition, the way Jerry and Terry were paid by Double J also changed. Before the bankruptcy, Jimmy paid Jerry by the job (or load of timber), as opposed to paying him a daily wage. This was because CTJ Logging had its own equipment, which Jerry and Terry operated. After the bankruptcy, however, Jimmy paid Jerry and Terry a daily wage, as he did with

---

[1] Jerry, via CTJ Logging, worked for various people prior to 2017.

No. 19-60421

the rest of the crew members working for Double J. According to Jimmy, the payment method changed because Jerry was then operating Double J's equipment rather than his own. With this background in mind, we turn to the specific events underlying this action.

On June 1, 2017, around 7 a.m., a tragic accident occurred. While operating Double J's skidder, a machine used to move cut trees, Terry mistakenly overran Jerry, resulting in Jerry's death. Jerry's beneficiaries later filed a wrongful death action against Double J and Terry in the Circuit Court of Oktibbeha County, Mississippi.

Well before the accident and wrongful death action, Shelter issued a standard general liability policy to Double J. The parties do not dispute that the policy was in force at the time of the accident or that, in the absence of any applicable exclusions, the policy applies to the wrongful death claims pending against Double J and Terry. In relevant part, the policy delineates the coverage Shelter agreed to provide to Double J:

1.   Insuring Agreement

 a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

2.   Exclusions

This insurance does not apply to:

 . . .

3

No. 19-60421

d.    Workers' Compensation and Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e.    Employer's Liability

"Bodily injury" to:

(1)    An "employee"[2] of the insured arising out of and in the course of:

(a)    Employment of the insured; or

(b)    Performing duties related to the conduct of the insured's business;

. . .

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

On March 8, 2018, Shelter filed this action asking the district court to determine whether it owed a duty to indemnify or defend Double J and Terry as a result of the wrongful death claims pending against them in state court. In its complaint, Shelter alleged that by virtue of the policy language and Mississippi law, Double J and Terry were not entitled to indemnity or defense because the policy's "Employee Exclusion" provision applied. Double J and Terry disagreed, asserting that Terry and Jerry were

---

2 According to the policy, "'Employee' includes a 'leased worker.' 'Employee' does not include a 'temporary worker.'"

No. 19-60421

independent contractors rather than Double J employees. After conducting discovery, the parties filed cross motions for summary judgment. On May 16, 2019, the district court granted Shelter's motion for summary judgment, concluding Terry and Jerry Johnson were employees, not independent contractors, of Double J. Defendants now appeal.

## II.

"We review a grant of summary judgment de novo, applying the same standard as the district court." *Hassen v. Ruston La. Hosp. Co., LLC*, 932 F.3d 353, 355 (5th Cir. 2019). Summary judgment is warranted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). While all justifiable inferences are viewed in favor of the nonmovant, "barebones, conclusory, or otherwise-unsupported assertions [will not] cut it; the nonmovant 'must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial.'" *Hassen*, 932 F.3d at 355–56 (quoting *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007)). "To ascertain whether genuine issues of material fact are present in this Mississippi based diversity action, we look to the substantive law of Mississippi." *McKee v. Brimmer*, 39 F.3d 94, 96 (5th Cir. 1994) (citation omitted).

## III.

On appeal, Defendants contend that the district court erred by granting summary judgment for Shelter and denying judgment for them. Because the relevant policy provisions are unambiguous, the ultimate question is whether Jerry was working as a Double J employee or as an independent contractor when the accident occurred. If Jerry was an employee, as Shelter contends, the policy's "Employee Exclusion" provision applies, and Shelter has no duty to defend or indemnify Double J and Terry. But if Jerry was an independent contractor, as Defendants allege, the "Employee Exclusion" provision does not apply.

No. 19-60421

As stated by the Mississippi Supreme Court, "[i]t is often a very elusive question whether a person under a given state of facts is an [employee] or independent contractor." *Richardson v. APAC-Miss., Inc.*, 631 So. 2d 143, 149 (Miss. 1994) (citation omitted). Mississippi law sets forth seven factors to consider in making this determination:

(1) The extent of control exercised over the details of the work;

(2) Whether or not the one employed is engaged in a distinct occupation or business;

(3) The skill required in the particular occupation;

(4) Whether the employer supplies the tools and place of work for the person doing the work;

(5) The length of time for which the person is employed;

(6) The method of payment, whether by the time or by the job; and

(7) Whether or not the work is a part of the regular business of the employer.

*Miss. Emp't Sec. Comm'n v. PDN, Inc.*, 586 So. 2d 838, 841–42 (Miss. 1991) (citing *Miss. Emp't Sec. Comm'n v. Plumbing Wholesale Co.*, 69 So. 2d 814 (1954)). The primary consideration, however, "is the right to or degree of control." *Id.* at 842. Applying these factors to the undisputed facts here, as the district court did, we conclude that summary judgment for Shelter was proper.

To begin, Double J had the right to control Jerry's work. Although Double J makes conclusory assertions otherwise, Jimmy himself stated in his deposition that he would "show [Jerry] the road and where to go in [to do his cutting work]." And he also testified that he "required [Jerry and his crew] to have safety meetings and talk." These statements show that Double J, at the very least, had the *right* to control Jerry. Defendants' contentions that "Double J did not control Jerry" and that "[o]n job sites and to the crew, Jerry was the 'boss'" are peripheral. And they fail to contradict an otherwise

6

No. 19-60421

clear record that Jerry, as Double J's foreman, was simply a "model employee," even if he was "the boss" on site. Jimmy said as much in his deposition:

> I don't think you've ever had a good employee or a good person like Jerry. I mean, he was one of a kind, and things like that— you know, that was my least worry. I never, never had to say one word, but—when he had his own crew or when he was running this crew of mine.

"One may be actually under slight supervision or control, but still be an employee where the right of control existed . . . ." *Miss. Emp't Sec. Comm'n v. Logan*, 159 So. 2d 802, 804 (Miss. 1964). Ultimately, it is the "right of control, not the overt exercise of that right, which is decisive." *Georgia-Pac. Corp. v. Crosby*, 393 So. 2d 1348, 1349 (Miss. 1981). Accordingly, the first factor favors employee status.

The second and third factors likewise favor employee status. As implied by its name, "Double J Timber Company, Inc." is in the logging business. Jerry performed services that were a regular part of Double J's everyday work, serving as a foreman for Double J's logging crew. *Fortner v. Specialty Contracting, LLC*, 217 So. 3d 736, 743 (Miss. Ct. App. 2017). As stated by Double J's owner, Jerry was "the boss of the crew. I would show him the timber, what to cut. He would take over from there." It is therefore clear that Jerry was not "engaged in a distinct occupation or business" apart from Double J's business. *PDN, Inc.*, 586 So. 2d at 842. Likewise, the record does not indicate that Jerry possessed any distinct skills apart from those that any other Double J employee might possess. To the contrary, Double J's owner testified in his deposition that he fired two other crew members in order to give Jerry and Terry jobs in early 2017. Again, these factors indicate that Jerry was an employee of Double J, not an independent contractor.

The fourth and fifth factors also indicate that Jerry was a Double J employee. As stated by the district court, "[t]he evidence regarding [the

7

fourth] factor is clear and undisputed—Double J . . . owned and supplied all of the tools, supplies, and place of work for . . . Jerry Johnson." Supplying tools and a place to work is a characteristic of an employer. *Estate of Delaney v. Miss. Emp't Sec. Comm'n*, 805 So. 2d 643, 647 (Miss. Ct. App. 2002). Along the same line, while Jerry had only worked for Double J for approximately six months, he worked exclusively and continuously for Double J during this time period with no indication that he intended to stop working at any certain point. *See Fortner*, 217 So. 3d at 743–44; *Davis v. Clarion-Ledger*, 938 So. 2d 905, 908 (Miss. Ct. App. 2006). In fact, according to Jimmy, Jerry had a job "as long as he wanted a job . . . it was left up to him." For these reasons, the fourth and fifth factors favor employee status.

The sixth factor, the method of payment, suggests employment as well. The record shows that Double J paid Jerry a daily wage rather than a fixed fee per project or per job. This was a distinct change from when Jerry previously did work for Double J via his own company, CTJ Logging; then, Double J paid CTJ Logging by the job, leaving Jerry to pay his own crew. Although Double J points out that it did not classify Jerry as a "W-2 employee," this distinction is immaterial. "[A]n employer's classification of a worker for tax purposes or failure to withhold taxes—which may be in error—does 'not prove independent-contractor status . . . .'" *Fortner*, 217 So. 3d at 742 (quoting *Se. Auto Brokers v. Graves*, 210 So. 3d 1012, 1017 (Miss. Ct. App. 2015)). As such, the method of payment at the time of the accident indicates that Jerry and Double J had an employee-employer relationship.

Finally, the seventh factor, whether the work Jerry performed was part of the regular business of Double J, also indicates that Jerry was a Double J employee. As stated *supra*, Jerry performed services that were a regular part of Double J's everyday work when he worked as a foreman for Double J's logging crew. *Id.* at 743. According to Jimmy's deposition testimony, Double J is a company that buys timber and has loggers cut it. This is precisely the service that Jerry provided.

No. 19-60421

In summary, there are no genuinely disputed facts that prevent summary judgment for Shelter in this matter. Applying Mississippi law to the undisputed record, Jerry was working as an employee of Double J, not as an independent contractor, at the time of the accident. The "Employee Exclusion" provision of Double J's insurance policy with Shelter therefore applied, and the district court properly entered summary judgment for Shelter. The district court's judgment is

AFFIRMED.