INZER, Justice:
This is a workmen’s compensation case. The only question to be determined is whether there was substantial evidence to support the finding of the Workmen’s Compensation Commission that claimant-appellant had not suffered a loss of wage earning capacity as a result of a compen-sable injury which arose out of and in the ^course of hisiemployment by appellee, International Harvester Company.
Claimant was employed as an apprentice mechanic for International Harvester Company at Clarksdale, Mississippi, and on October 24, 1966, he suffered an accidental injury in the nature of a myocardial infarction in the course and scope of his employment. His average weekly wage at the time of his injury was $81.60. The attorney referee found that claimant reached maximum medical recovery on February 1, 1967, and that as a result of his injury he had sustained a thirty percent permanent partial disability to the body as a whole of which fifty percent was due to claimant’s pre-existing condition.
The employer was ordered to pay claimant temporary total disability from the date of injury until the date of maximum medical recovery. The employer was also ordered to furnish and pay for all necessary medical treatments, services, and supplies resulting from the injury. However, the attorney-referee found that claimant had not suffered any loss of wage earning capacity for the reason that his post-injury earnings were equal to, or in excess of, his average weekly wage prior to his injury. He also found that claimant had failed to overcome the presumption that his earning capacity had not been impaired. The attorney-referee held that the presumption had not been rebutted (a) by evidence of general wage increases since injury, (b) by claimant’s own greater maturity and training, (c) by longer hours worked by claimant after the accident, (d) by payment of sympathy wages, or (e) by temporary or unpredictable character of post-injury earnings. The findings of the attorney-referee *925 were affirmed by an order of the commission and on appeal the Circuit Court of Coahoma County affirmed the order of the commission. Hence this appeal.
It is the contention of the claimant that although the proof does show that he was earning more than he made prior to his injury, the uncontradicted proof shows that prior to his injury claimant was strong, in good health, doing a job which required considerable exertion and strain. -Not only was he able to perform his work well but also able to engage in all activities of a normal, healthy person including those requiring considerable strength and physical ability. That his injuries resulted in severe physical limitations in that he can no longer do heavy lifting, he is short of breath, tires easily, hurts at night after doing his work. He cannot engage in any recreational activity that he could prior to his injury. The injury moreover has resulted in his life being substantially changed and all his activities restricted. Under these circumstances appellant contends that it is obvious that his injuries have resulted in a severe limitation on his job opportunities.
Appellee contends that there was substantial evidence to support the finding of the commission because the proof shows that appellant is doing the same type of work as he did before the accident and is earning more wages and that he failed to overcome the presumption that there was no loss of earning capacity.
There is no doubt that claimant’s ability to perform his work activities has been limited to some extent as a result of his injuries. Dr. William V. Bobo, a cardiologist specialist, who examined claimant, testified that he had suffered a thirty percent permanent partial disability for his type of work. It was the doctor’s opinion that he should remain under a doctor’s surveillance with periodic check ups. He stated that appellant would be able to and should engage in some work but he would have to take the precautions to work at a more deliberate pace than he had prior to his injury and that he will have to be very conscious of saving his own strength and use all the labor saving devices he can. He should work only the minimum time necessary to make a living and not do any overtime work or engage in any vigorous pastimes. It was his opinion that these precautions and limitations would change the tenor and character of claimant’s life.
Dr. Van R. Burnham, Jr., treated claimant for his accidental injury by prescribing medication to keep his blood from clotting and checked his blood at regular intervals to make sure he was getting enough medicine to keep his blood at an adequate anticoagulant level. He stated that when he was in pain claimant was still having to take nitroglycerin tablets to dilate the coronary arteries and increase the blood supply to the heart. He was of the opinion that claimant had sustained a thirty percent permanent partial disability as a result of his injury. When asked if he had an opinion as to claimant’s limitation with reference to his physical work, he said:
Well, I think his whole tempo of life should be slowed down from what it was previously. I think that he should think slow and act slow and should not engage in any strenuous or sustained physical activity which would require undue exertion.
The only other medical testimony was that of Dr. Charles V. Dowling, a specialist in cardiology, who testified as an expert witness. He never examined claimant and his testimony was principally directed to the question of whether the work activities of claimant were a contributing cause of the myocardial infarction. However, he did say where there was a good recovery, such as claimant had experienced, the chances of claimant’s carrying on his old occupation were good and that his limitations would be slight.
Claimant has a third grade education and the only type of work that he is qualified to do is mechanical work. He was a strong, able bodied man with no limitation on his *926 activities. He returned to work at International at the same weekly wage on February 1, 1967, and worked for appellee until July 1, 1967. He performed his work in a satisfactory manner and during that period made no complaint to his employer. 'He testified that the work was more than he could do and for this reason he quit his job. About two weeks later he went to work for Wade, Inc. as a mechanic working on farm equipment. His employer did not require a physical examination and claimant did not reveal that he had suffered a heart attack. He testified that the shop where he was now working was .much better equipped and he was not required to do any heavy lifting. His work had been confined to repair of tractors, combines and other farm equipment which did not require much stooping and bending. He stated that this work was much easier than that at International but he did not know whether he could continue to do the work because it tires him and after working hours he is too tired to do anything.
The shop foreman at Wade, Inc. testified that he employed claimant and that claimant told him before he was hired that he would be able to do the work that they had to do and that he was hired on a basis that if he could not do the work he could not stay. He further said that so far claimant’s work had been satisfactory and without complaint.
The pertinent statute involved is Section 6998-09(c) (25), Mississippi Code 1942 Annotated (Supp.1966) which states:
Other cases: In all other cases in this class of disability, the compensation shall be sixty-six and two-thirds per centum (66^4%) of the difference between his average weekly wages, subject to the maximum limitations as to weekly benefits as set up in this act, and his wage earning capacity thereafter in the same employment or otherwise, payable during the continuance of such partial disability, but subject to reconsideration of the degree of such impairment by the commission on its own motion or upon application of any party in interest, and such payments shall in no case be made for a longer period than four hundred fifty (450) weeks.
In Russell v. Southeast Utilities Service Co., 230 Miss. 272, 92 So.2d 544 (1957), we said:
The statutory test is calculated by comparing actual earnings before the injury with earning capacity after the injury. The two items are not the same. Karr v. Armstrong Tire & Rubber Co., 1953, 216 Miss. 132, 61 So.2d 789. The Commission was warranted in finding that appellant’s average weekly wages for one year prior to his injury were $90. Code Section 6998-16. Earning capacity is a more theoretical concept. The test is one of capacity. The trier of fact, the Commission, must make the best possible estimate of future impairment of earnings, on the strength of both actual post-injury earnings and any other evidence of probative value on the issue of earning capacity. This is essentially a question of fact for the Commission.
2 Larson, Workmen’s Compensation Law (1952) Section 57.21, states the recognized approach to this problem as follows: “It is uniformly held, therefore, without regard to statutory variations in the phrasing of the test, that a finding of disability may stand even when there is evidence of actual post-injury earnings equalling or exceeding those received before the accident. The position may be best summarized by saying that actual post-injury earnings will create a presumption of earning capacity commensurate with them but the presumption may be rebutted by evidence independently showing incapacity or explaining away the post-injury earnings as an unreliable basis for estimating capacity. Unreliability of post-injury earnings may be due to a number of things: increase in general wage levels since the time of accident; claimant’s own greater maturity or training; longer hours worked by claimant after the accident; payment of wages *927 disproportionate to capacity out of sympathy to claimant; and the temporary and unpredictable character of post-injury earnings.”
Of course earnings equal to pre-injury earnings are strong evidence of nonim-pairment of earning capacity. However, this is not conclusive. . It is a re-buttable presumption, which may be removed by the various factors referred to above. This Court first held to that effect in Karr v. Armstrong Tire & Rubber Co., supra. Later cases in accord are Elliott v. Ross Carrier Co., 1954, 220 Miss. 86, 70 So.2d 75; Mississippi Products v. Gordy, 1955, 224 Miss. 690, 80 So.2d 793, 797; Port Gibson Veneer & Box Co. v. Brown, 1955, 226 Miss. 127, 83 So.2d 757, 761; Ebasco Services v. Harris, 1956, 227 Miss. 85, 85 So.2d 784; and King v. Westinghouse Electric Corporation, 229 Miss. 830, 92 So.2d 209. See also 58 Am.Jur. Workmen’s Compensation, Sections 284, 285. (230 Miss. at 281, 283, 92 So.2d at 547, 548.)
It is clear from what was said in this case that the presumption may be rebutted by evidence independently showing incapacity as well as by evidence showing that the post-injury earnings are not a reliable basis for estimating earning capacity. We think that there was evidence from which the Commission could have found that claimant had rebutted the presumption by evidence independently showing a loss of capacity, although he did not show that his post-injury earnings were an unreliable basis for estimating capacity. However, we cannot say that there is not substantial evidence to support the finding of the commission that he failed to overcome the presumption.
In reaching this decision we have not overlooked the earnest contention of counsel that although claimant has performed the same type of work that he did prior to his injury at the same or higher wages, it is doubtful that he will be able to continue to do so in the future, furthermore, if he loses his present employment for any reason, it will be extremely difficult for him to secure employment on the open labor market because of his heart condition. Of course, one of the problems in comparing wages before and after injury and drawing a presumption therefrom is in fixing the period of time after injury to be considered. The statute fixes the time to be considered before the injury to arrive at the average weekly wage, but does not fix any definite period of time to be considered after injury. The post-injury time considered in this case was about eight months and while claimant has performed his work in a satisfactory manner, there is doubt that he will be physically able to continue to do so. However, Section 6998-09, supra, affords protection by the specific provision that during the continuance of partial disability the commission may on its own motion or upon application of any party in interest reconsider the degree of impairment. The furnishing of medical services and supplies is the payment of compensation for the purpose of tolling any statute of limitations that might apply. Graeber Bros., Inc. v. Taylor, 237 Miss. 691, 115 So. 2d 735 (1959).
Since there is substantial evidence to support the order of the Commission the judgment of the circuit court affirming that order must be and is affirmed.
Affirmed.
GILLESPIE, P. J., and PATTERSON, SMITH and ROBERTSON, JJ., concur.