975 So.2d 256 (2007)
ROBINSON PROPERTY GROUP, LIMITED PARTNERSHIP, d/b/a Horseshoe Casino and Hotel, and Insurance Company of the State of Pennsylvania, Appellants
v.
Carrie NEWTON, Appellee.
No. 2006-WC-01288-COA.
Court of Appeals of Mississippi.
October 2, 2007.
Rehearing Denied February 19, 2008.
George E. Dent, Tupelo, for appellants.
Carrie J. Newton, pro se.
Before MYERS, P.J., ISHEE and CARLTON, JJ.
MYERS, P.J., for the Court.
¶ 1. At issue in this appeal is whether the Tunica County Circuit Court erred in affirming the decision of the Mississippi Workers' Compensation Commission, which awarded benefits to Carrie Newton, relying in part on certain medical record evidence not properly admitted into evidence. Carrie Newton was granted workers' compensation benefits during two different periods of time for focal dystonia, a condition allegedly aggravated by her work as a card dealer. Horseshoe Casino *258 and Hotel (Horseshoe) argues that the Commission improperly relied upon the unauthenticated medical records of Dr. Alan Nadel as a basis for awarding benefits for Newton's focal dystonia, and seeks reversal of this portion of the lower court's order. We find that as a result of the Commission's departure from its own procedural rules, certain medical records were entered into evidence that erroneously provided medical causation relating Newton's focal dystonia to her work as a card dealer for Horseshoe. Without the consideration of the aforementioned unauthenticated medical records, there was not substantial evidence presented upon which the Commission could find that Robinson was entitled to temporary or permanent disability benefits for focal dystonia. Therefore, we find the circuit court's affirmance of the Commission's award was in error. We reverse and render Newton's award relating to a finding of work-related focal dystonia.

UNDERLYING FACTS AND PROCEDURAL HISTORY
¶ 2. Carrie Newton was initially hired by Horseshoe Casino in December 1996 and was employed during her first stint of employment with Horseshoe through January 26, 1998. During this employment period, Newton filed a petition to controvert, alleging that her card dealing duties caused carpal tunnel syndrome. Horseshoe admitted compensability for the carpal tunnel injury and provided medical benefits and temporary total disability benefits, but denied permanent disability benefits and Newton's claim of loss of wage-earning capacity. After Newton's carpal tunnel treatment ended and she was released to work without restrictions, she claimed she continued to experience pain. She returned to her treating physician with these complaints; however, he opined that the continuing problem was not related to her carpal tunnel and referred her to a neurologist, Dr. Alan M. Nadel.
¶ 3. Dr. Nadel diagnosed Newton with focal dystonia of unknown cause, a neurological condition affecting an isolated body part. Dr. Nadel found on February 27, 1998, that card dealing would "exacerbate Newton's symptoms," but he opined that her focal dystonia was not caused by her work. Thereafter, an independent medical examination was ordered by the administrative judge. The independent medical examiner also diagnosed Newton with focal dystonia, but concluded that the condition was not work related.
¶ 4. Approximately three years later, Dr. Nadel saw Newton again, on January 12, 2001. At that time, he found that Newton's focal dystonia was aggravated by her work, stating "there is no doubt that the symptom is aggravated by her card dealing." However, the record reflects that at the time that Dr. Nadel made this medical opinion, Newton had not dealt cards since 1997. In fact, during the interim between Dr. Nadel's 1998 medical assessment and his 2001 medical opinion, Newton had been discharged from Horseshoe for failing to report, was employed as an appointment clerk for a medical facility, had undergone rotator cuff surgery due to an unrelated problem, had been re-employed as a dispatcher by Horseshoe, and discharged again for failure to report. It is from this discrepancy contained within the medical records of Dr. Nadel from which this appeal arises.
¶ 5. The administrative judge admitted Dr. Nadel's medical records into evidence at the hearing on the matters, and based on these records, as well as the 2004 medical records of Dr. Donald Sullivan, awarded Newton temporary total disability benefits covering several time periods and *259 permanent disability benefits for a period of fifty weeks. The Commission and circuit court subsequently adopted the administrative judge's findings and affirmed. Horseshoe appeals the award related to the finding of work-related focal dystonia, requesting review of several issues involving the award of temporary and permanent disability based on the determination that Newton's work with Horseshoe related to her condition of focal dystonia.

STANDARD OF REVIEW
¶ 6. We follow the direction of our supreme court in stating our standard of review,
This Court is bound by the decision of the Mississippi Workers' Compensation Commission if the Commission's findings of fact are supported by substantial evidence. . . . Stated differently, this Court will reverse the Commission's order only if it finds that order clearly erroneous and contrary to the overwhelming weight of the evidence. A finding is clearly erroneous when, although there is some slight evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made by the Commission in its findings of fact and in its application of the Act.
Barber Seafood, Inc. v. Smith, 911 So.2d 454, 461(¶ 27) (Miss.2005) (quoting Hardaway Co. v. Bradley, 887 So.2d 793, 795 (Miss.2004) (citations omitted)).

DISCUSSION
I. WHETHER THE COMMISSION'S RELIANCE ON IMPROPERLY ADMITTED EVIDENCE IN VIOLATION OF ITS OWN PROCEDURAL RULES WAS ERROR MANDATING REVERSAL
¶ 7. Horseshoe argues that the Commission erroneously relied on medical record evidence not properly introduced into the record in awarding Newton workers' compensation benefits. Newton agrees that the medical records at issue were introduced improperly, but argues that the benefits were not awarded in error. Our review of the record adduces that during the hearing the administrative judge admitted the medical records of Dr. Nadel into evidence without proper authentication, despite Newton's noncompliance with the Mississippi Workers' Compensation Commission (MWCC) Procedural Rule 9. Horseshoe objected to the introduction of these records. The administrative judge overruled Horseshoe's objection, citing a "special situation," but did not describe that situation, and stated "a copy was in the Commission file, so I'll allow it." On appeal, Horseshoe argues that a copy of the second set of Dr. Nadel's records from January 12, 2001  the records evidencing that Dr. Nadel assumed Newton had been card dealing for Horseshoe since 1997 and relating the focal dystonia to her card dealing  actually were not located in the Commission's file. Furthermore, Horseshoe argues that even if Dr. Nadel's 2001 medical records had been properly authenticated and introduced into evidence at the hearing, they should not have been relied upon to formulate an award because Dr. Nadel was under a mistaken impression that Newton had been working as a card dealer for Horseshoe since 1997, and his medical opinion in 2001 was based on that mistaken fact. Horseshoe points out that the testimony at the hearing revealed that during the time the disability award covered, Newton had not been card dealing, and had been working for other employers, but Dr. Nadel was apparently unaware of these facts. Horseshoe requests this Court to review whether the Commission's abandonment of its own procedural rules regarding the admission of medical evidence requires a reversal.
*260 ¶ 8. The Mississippi Workers' Compensation Commission has the procedural authority to promulgate and enforce its own rules for the administration of compensation claims, Mississippi Code Annotated section 71-3-61 (Rev.2000), and has the "discretion to enlarge the scope of the record and relax rules of discovery applicable to hearings." Bermond v. Casino Magic, 874 So.2d 480, 484(¶ 11) (Miss.Ct. App.2004); see also Mid-Delta Home Health, Inc. v. Robertson, 749 So.2d 379, 387(¶ 29) (Miss.Ct.App.1999) (quoting Delta Drilling Co. v. Cannette, 489 So.2d 1378, 1380-81 (Miss.1986)). However, while the Commission is to be given deference in applying and interpreting its own rules, the concern of ensuring due process still remains. Bermond, 874 So.2d at 485(¶ 11). Due process dictates that the Commission is to follow its own procedural due process principles in conducting its duties of administering workers' compensation claims. Id. In this case the Commission accepted unauthenticated medical records that were derived as a result of faulty information, without proper introduction as required by MWCC Procedural Rule 9, and utilized the records as a basis for awarding compensation.
¶ 9. The Commission has implemented its authority and relaxed the general rules of evidence, which are technically only applicable to circuit, chancery, and county courts in civil suits, "so as to permit the introduction of any relevant and competent evidence." MWCC Proc. R. 8. Utilizing this authority to relax the Mississippi Rules of Civil Procedure, the Commission promulgated MWCC Procedural Rule 9, which provides for the introduction of evidence, in pertinent part:
The party wishing to introduce such medical records shall notify opposing parties and the Commission by written notice served at least thirty (30) days prior to the scheduled hearing.
. . .
The medical records of examining or treating physicians . . . shall be submitted with . . . a sworn statement of either the physician or the physician's medical records custodian stating that the attached medical records are a true and correct copy of the medical records of the physician as kept in the regular course of the physician's medical practice.
The introduced medical records of Dr. Nadel dated in 2001 did not comport with MWCC Procedural Rule 9. Nonetheless, the administrative judge allowed the medical records into the record. While we recognize that MWCC Procedural Rule 14 allows the Commission or administrative judge to deviate from the procedural rules "insofar as compliance therewith may be found to be impossible or impracticable," in this case, we are unable to ascertain the "special situation" to which the administrative judge referred. The unauthenticated medical records of Dr. Nadel dated in 2001, which contained the opinion that Newton suffered focal dystonia as a result of her work, were grounded on the mistaken belief that Newton was currently and had been dealing cards for Horseshoe since 1997, and did not account for Newton's intervening employment elsewhere. It was these records upon which the administrative judge based part of Newton's compensation award, finding Newton's focal dystonia was incurred as a result of her work with Horseshoe.
¶ 10. This Court has stated before that "[i]t is a rare day when we will reverse the Commission for an action taken in the implementation and enforcement of its own procedural rules." Mid-Delta Home Health, Inc., 749 So.2d at 387(¶ 30). However, giving the Commission all the discretion in disregarding its own procedural rule, we still cannot uphold its decision in *261 awarding the temporary total disability and permanent disability benefits for a condition improperly causally connected to the claimant's work. We, therefore, reverse and render the disability awards based on the finding that Newton suffered focal dystonia as a result of her work with Horseshoe.
II. WHETHER THE COMMISSION'S FINDING OF TEMPORARY TOTAL DISABILITY FROM JANUARY 4, 2004 TO JUNE 7, 2004 WAS BASED ON THE CORRECT LEGAL STANDARD AND SUPPORTED BY SUBSTANTIAL EVIDENCE
¶ 11. Horseshoe additionally appeals the temporary total disability benefits awarded for focal dystonia relating to Newton's treatment sought and received in 2004. In January 2004, nearly seven years after Newton worked as a card dealer for Horseshoe, she began injection treatment for her focal dystonia with Dr. Sullivan. Dr. Sullivan opined that Newton's condition was static and recommended injections several times per year indefinitely. The Commission awarded temporary total disability benefits during the 2004 time period that Newton was treated by Dr. Sullivan, and Horseshoe argues that this part of the disability award was entered in error. Horseshoe points out that during the period of January 4, 2004 to June 7, 2004, for which Newton was awarded benefits for her focal dystonia condition, Newton was not, nor had been employed with Horseshoe for some time. In fact, Horseshoe points out that Newton had been employed by another casino, Grand Casino Resort, around that same time period and was card dealing  the activity that she had been previously medically restricted from performing by Dr. Nadel. Furthermore, evidence introduced at the hearing showed that prior to her treatment with Dr. Sullivan in 2004, Newton had worked in several different positions with several different employers and had incurred other physical injuries during that interim.
¶ 12. We can find no basis for the award of temporary total disability benefits during 2004 relating to injuries incurred as a result of Newton's employment with Horseshoe. The slim evidence supporting the Commission's finding that Newton's treatment in 2004 was related to a condition of focal dystonia incurred as a result of her card dealing for Horseshoe in 1997 pales in comparison to the overwhelming weight of the evidence to the contrary. Thus, the award for temporary total disability for the period in 2004 was granted in error. Therefore, we reverse and render.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF TUNICA COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANTS AND THE APPELLEE.
LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY.