GRIFFIS, P.J.,
for the Court:
¶1. Barry Mabus suffered an injury while working for Mueller Industries Inc. and filed a petition to controvert. The workers’ compensation administrative judge (AJ) denied Mabus’s request for permanent disability benefits. The Mississippi Workers’ Compensation Commission (Commission) affirmed. Mabus now appeals.
FACTS AND PROCEDURAL HISTORY
¶ 2. Mabus suffered an on-the-job injury on December 1, 2004, when he injured his back while moving a scrap pan from the machine he operated. Mabus initially sought medical treatment from Tim Evans, a nurse practitioner, and then Dr. Carl Bevering. Mabus then switched to Dr. LaVerne Lovell and executed a choice-of-physician form electing Dr. Lovell as his primary provider.
¶3. Mabus first visited Dr. Lovell on April 26, 2005. Dr. Lovell determined Ma-bus suffered a disc herniation and recommended surgery. On May 4, 2005, Dr. Lovell performed a hemilaminectomy and discectomy on Mabus’s L4 and L5 vertebrae. Mabus continued to see Dr. Lovell for follow-up appointments and reported continued back pain. At a July 7, 2005 evaluation, Mabus claimed that he rein-jured his back at work, but Dr. Lovell noted he could not confirm that a reinjury occurred.
¶4. Dr. Lovell found Mabus reached maximum medical improvement (MMI) on August 11, 2005. At MMI, Dr. Lovell released Mabus for work duties with a seventy-pound weight restriction and an eight percent permanent-partial impairment (PPI) overall. Dr. Lovell treated Mabus five additional times after he reached MMI. Dr. Lovell’s assessment remained the same, but he did refer Mabus to Dr. Sam Murrell for a second opinion upon Mabus’s request.
¶ 5. Dr. Murrell sporadically treated Ma-bus from November 21, 2005, until June 5, 2006. Mabus did not return to Dr. Mur-rell again until July 14, 2008, when Dr. Murrell assessed Mabus with a PPI of thirteen percent and concluded Mabus reached MMI without any further work restrictions.
¶6. Mabus returned to Dr. Murrell on August 11, 2010, but Dr. Murrell did not see any change in Mabus’s condition. In the interim, Mabus also sought treatment from Dr. Bruce Porter and Evans for pain management. Mabus also went to the emergency room on at least two occasions. Mabus failed to obtain authorization for treatment from Dr. Porter, Evans, and the emergency-room doctors.
¶ 7. Mueller stipulated to the compensa-bility of the injury and paid medical expenses and temporary disability benefits from March until November 2005. Mabus filed a petition to controvert on December 7, 2005, after Mueller suspended the temporary disability payments.
¶ 8. Mueller fired Mabus around January 2006. Mabus applied for a handful of jobs, but did not find employment. At some point in 2006, Mabus started his own business and earned higher wages than he did at Mueller. During this time, howev *681 er, Mabus sought treatment for continued back and leg pain. By 2009, Mabus closed his business and remained unemployed.
II9. Mabus applied for and received Social Security disability benefits in 2012, but continued to seek permanent-disability and medical-treatment payments from Mueller. On October 7, 2011, Mabus’s claim was dismissed for failure' to file a complete prehearing statement. Mabus filed the prehearing statement and a motion to reinstate his claim on October 27, 2011. An order reinstated; the claim on November 8, 2011,.
¶ 10. On March 14, 2018, Mabus filed a motion for recusal of the AJ, who presided over the case beginning December 28, 2011, on the ground of bias or prejudice against Mabus. The AJ denied the motion to recuse on March 20, 2013, and the Commission affirmed the order on April 17, 2018.
¶ 11. A hearing on the merits was held on August 20, 2013. The AJ found Mabus failed to show by a preponderance of the credible evidence’that he suffered from a continuous work-related injury and from a permanent loss of wage-earning capacity. The AJ denied permanent disability and medical benefits in an order dated November 21, 2013. Mabus appealed the AJ’s decision on December 9, 2013. He also filed another motion for medical treatment on August’ 11, 2014. The Commission affirmed the AJ’s decision, without additional fact-finding or analysis, and dismissed Mabus’s motion for medical treatment in an order issued on August 20,2014.
¶ 12. It is from this order that Mabus appeals. He has submitted the issues in this appeal, consolidated and edited for clarity, as: (1) the AJ should have had to recuse himself, and the Commission erred in not removing him; (2) the credible evidence did not support the Commission’s decision to deny benefits; and (3) the Commission erred in denying Mabus’s motion for medical treatment by failing to review the relevant medical evidence and issuing an order denying treatment before Mueller submitted a response.
ANALYSIS

I. Whether the AJ’s order denying re-cusal and the Commission’s affirmation of the order were in error.

¶ 13. Mabus asserts the AJ should have recused himself after he allegedly demonstrated bias in favor of Mueller. Mabus further contends the Commission erred when it failed to remove the AJ. Mueller counters that Mabus’s claims lack substantiation as the record fails to indicate any instance of bias by the AJ.
¶ 14. “[T]he supreme court has clarified that appellate court[s] must apply the manifest-error standard when reviewing a judge’s refusal to recuse himself.” Sullivan v. Maddox, 122 So.3d 75, 81 (¶ 15) (Miss.Ct.App.2013) (citing Bredemeier v. Jackson, 689 So.2d 770, 774 (Miss.1997)). “In applying this standard of review to a denial of a recusal motion, we acknowledge that the law presumes the impartiality of the trial judge.” Id.
¶ 15. Prior to the hearing on the merits, Mabus’s attorney, Mueller’s attorney, and the AJ participated in a telephonic conference. Mabus claims that during the conference, the AJ commented that the case needed a resolution and that Mabus would not receive any award if the parties did not settle. Mabus argues the AJ’s comments conflict with Canon 3(B)(2) of the Mississippi Code of Judicial Conduct, which required the AJ’s recusal.
¶ 16. Canon 3(B)(2) states: “A judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, *682 public clamor, or fear of criticism.” Canon 3 further dictates that “[a] judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice^]” Code of Judicial Conduct, Canon 3(B)(5). Canon 3 continues: “Judges should disqualify themselves in proceedings in which their impartiality might be questioned by a reasonable person knowing all the circumstances[.]” Code of Judicial Conduct, Canon 3(E)(1).
¶ 17. To warrant the disqualification of the AJ, Mabus needed to present evidence of bias beyond a mere assertion. “[T]he law presumes that the judge is qualified and unbiased. In order to overcome the presumption, the movant must offer evidence which will produce a reasonable doubt about the validity of the presumption.” Wash. Mut. Fin. Grp., LLC v. Blackmon, 925 So.2d 780, 785 (¶ 12) (Miss. 2004) (citations omitted).
¶ 18. There is no indication in the record that the AJ exhibited any bias or prejudice against Mabus. Mueller’s attorney, a participant in the conference, denied the AJ made any prejudicial comment regarding the parties’ failure to settle. Without more, this Court finds no error. This issue is without merit.

II. Whether the substantial evidence supported the Commission’s decision.

¶ 19. Mabus primarily contends that both the AJ’s and Commission’s decisions are contrary to the substantial evidence. Mabus argues that he proved his disability and asserts that Mueller failed to dispute the evidence. Therefore, the AJ could not deny Mabus any benefits.
¶ 20. “The decision of the Commission will be reversed only if it is not supported by substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law.” Concert Sys. USA, Inc. v. Weaver, 33 So.3d 1186, 1188 (¶ 10) (Miss.Ct.App.2010) (citing Weatherspoon v. Croft Metals, Inc., 853 So.2d 776, 778 (¶ 6) (Miss.2003)). When the issue involves a question of law, however, the review is de novo. Davis v. Clarion-Ledger, 938 So.2d 905, 907 (¶ 5) (Miss.Ct.App.2006) (citing Shelby v. Peavey Elecs. Corp., 724 So.2d 504, 506 (¶ 8) (Miss.Ct.App.1998)).
¶ 21. In this case, the Commission’s order affirmed the AJ’s order without additional analysis. Therefore, “[wjhere, as here, the Commission adopts the findings of the [AJ] without presenting its own findings of fact, this Court will examine the findings of fact made by the [AJ].” Leslie v. SAIA Motor Freight, 970 So.2d 218, 220 (¶ 11) (Miss.Ct.App.2007) (citation omitted). This Court then looks to the AJ’s order for determination of the underlying issues.
¶ 22. Mabus asserts the AJ erred in denying him permanent-total or, in the alternative, permanent-partial disability benefits. Mabus argues he submitted sufficient evidence to show he received a permanent injury, suffered a loss of wage-earning capacity, and unsuccessfully obtained post-injury employment. Accordingly, Mabus asserts the substantial evidence required the Commission to award either permanent-partial or permanent-total disability benefits.
¶23. “It is well settled that workers’ compensation claimants have ‘the burden of proving disability and the extent thereof.’ ” Smith v. Johnston Tombigbee Furniture Mfg. Co., 43 So.3d 1159, 1165 (¶ 21) (Miss.Ct.App.2010) (quoting Lifestyle Furnishings v. Tollison, 985 So.2d 352, 359 (¶ 21) (Miss.Ct.App.2008)). “ ‘Disability’ means incapacity because of injury to earn *683 the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings.” Miss.Code Ann. § 71-3 — 3(i) (Rev.2011).
¶ 24. “The concept of disability has components of both a physical injury and a loss of wage-earning capacity.” Smith, 43 So.3d at 1165 (¶19) (citation omitted). “In order to meet the definition of disability, the claimant must not be able to obtain work in similar or other jobs, and the claimant’s unemployability must be due to the injury in question.” Id. (citing Ga. Pac. Corp. v. Taplin, 586 So.2d 823, 828 (Miss.1991)).
¶ 25. This Court must look to the medical evidence to determine the extent of Mabus’s impairment. To do so, this Court first must decide whether the AJ improperly excluded portions of Mabus’s medical records. At the hearing, Mabus attempted to introduce supplemental medical evidence for treatment he received from physicians other than the ones approved by Mueller. Mueller objected to the introduction of this evidence as a violation of Mississippi Workers’ Compensation Commission Procedural Rule 9(1). The AJ found that Rule 9(1) applied and marked the evidence for identification purposes only. Mabus asserts this exclusion was in error because Mueller allegedly possessed most, if not all, of the evidence prior to the thirty-day deadline.
¶ 26. Mabus fails to cite any legal authority to support his contention. Rule 9(1) provides:
The medical records of examining or treating physicians, including narrative office notes [and] reports dictated by the physician in the ordinary course of his or her practice!,] ... may be introduced into evidence in lieu of direct testimony taken at the hearing or by deposition upon the following conditions.
1. The party wishing to introduce such medical records shall notify opposing parties and the Commission by written notice served at least thirty (30) days prior to the scheduled hearing. The prehearing statement may'suffice as notification under this rule.
This Court previously found error when the Commission relied on improperly introduced medical evidence. Robinson Prop. Grp., Ltd. P’ship v. Newton, 975 So.2d 256, 260 (¶ 8) (Miss.Ct.App.2007).
 ¶ 27. In Newton, the Commission relied on unauthenticated medical records in violation of Rule 9. Id. at (¶9). Though the decision in Newton turned on the proper authentication component of Rule 9, the reasoning remains the same as “[d]ue process dictates that the Commission is to follow its own procedural due process principles in conducting its duties of administering workers’ compensation claims.” Id. at (¶ 8). Therefore, the AJ properly excluded evidence that did not comport with the rules of procedure.
¶ 28. As such, this Court only considers the medical evidence properly admitted before the AJ and Commission. The medical evidence showed that Mabus suffered a right-disc herniation and underwent surgery on May 4, 2005. Though Mabus asserted he reinjured his back in July 2005, Dr. Lovell noted that he could not confirm a reinjury. Further, Dr. Lo-vell placed Mabus in physical therapy, conditioning, and hardening -in preparation for his return to work.
¶29. On August 11, 2005, Dr. Lovell assessed Mabus at MMI with an impairment of eight percent to his body as a whole and a seventy-pound lifting restriction. Dr. Lovell last saw Mabus on January 19, 2006, and found a possible slight *684 reherniation at Mabus’s L4-5. Dr. Lovell, however, did not alter his MMI assessment, and only added a condition of no repetitive stooping or bending. Dr. Lovell offered to perform a second surgery, but Mabus declined.
¶ 30. Like Dr. Lovell, Dr. Murrell found a possible reherniation when he first evaluated Mabus on November 21, 2005. Mabus returned to Dr. Murrell in April, June, and July 2006 and reported his back and hip pain remained frequent despite medications and steroid injections.
¶ 31. On July 14, 2008, Mabus returned to Dr. Murrell with complaints of lower-back, buttock, and neck pain. Dr. Murrell, however, did not find any change in Ma-bus’s condition. Dr. Murrell assessed Ma-bus at a MMI as of that day and determined a PPI of thirteen percent without any work restrictions. Dr. Murrell last saw Mabus on August 11, 2010, but found no change in Mabus’s condition.
¶ 32. Dr. Murrell’s assessment in 2010 shows the latest treatment that was properly entered into evidence. In his order, the AJ determined Mabus’s date of MMI on July 5, 2006, based on Dr. Murrell’s last evaluation of Mabus prior to July 14, 2008. The AJ reasoned that because Mabus’s condition remained unchanged between the July 5, 2006 and the July 14, 2008 visits, the appropriate date for MMI fell to the earlier of the two visits.
¶ 33. Because Mabus returned to Dr. Murrell in 2008 and 2010, the AJ determined Mueller adequately accommodated Mabus in receiving follow-up treatment. The AJ also found Mabus failed to show by the preponderance of the evidence that he required further treatment, especially in light of the fact that Mabus did not file a new motion for medical treatment between April 2010 and the hearing in August 2013.
¶ 34. We find the AJ did not err in his determination. Based on the substantial evidence, Mabus failed to show he suffered from continuous back pain after 2006. Mabus sought treatment after 2006, yet Dr. Murrell appreciated no change in Ma-bus’s condition in subsequent visits in 2008 and 2010. Further, Mabus failed to properly submit any supplemental medical evidence to support his contention. Therefore, the medical evidence did not support a finding of permanent impairment.
¶ 35. In addition to the medical evidence, “[disability is determined by comparing the employee’s pre-injury wages with the employee’s post-injury capacity to earn wages in the open labor market.” Univ. of Miss. Med. Ctr. v. Smith, 909 So.2d 1209, 1218 (¶ 31) (Miss. Ct.App.2005) (citing Karr v. Armstrong Tire & Rubber Co., 216 Miss. 132, 137, 61 So.2d 789, 792 (1953)). “A presumption of no loss of wage[-]earning capacity arises when the claimant’s post-injury earnings are equal to or exceed pre-injury earnings.” Id. at (¶ 32) (citing Gen. Elec. Co. v. McKinnon, 507 So.2d 363, 365 (Miss.1987)).
¶36. In this case, Mabus returned to Mueller after his back surgery. Mabus worked under a thirty-pound restriction for the first few months after his return. Mabus asserted at a follow-up visit with Dr. Lovell in July 2005 that he reinjured his back. Nonetheless, Dr. Lovell found Mabus reached MMI on August 11, 2005.
1137. Mabus remained off of work, however, as Mueller paid temporary disability payments through November 2005. Ma-bus stopped working for Mueller and began his own mobile-home repair business in 2006. Mabus ran his business from 2006 to 2009, and earned annual wages of $20,786, $44,353, and $42,017, respectively. Mabus closed the business in 2009 and only earned $10,569 for the year.
¶ 38. “[A]ctual post-injury earnings will create a presumption of earn *685 ing capacity commensurate with them but the presumption may be rebutted by evidence independently showing incapacity or explaining away the post-injury earnings as an.unreliable basis for estimating capacity.” Cox v. Int’l Harvester Co., 221 So.2d 924, 926 (Miss.1969) (citation omitted).
Unreliability of post-injury earnings may be due to a number of things: increase in general wage levels since the time of accident; [the] claimant’s own greater maturity or training; longer hours worked by [the] claimant after the accident; payment of wages disproportionate to capacity out' of sympathy to [the] claimant; and the temporary and unpredictable character of post[-]injury earnings.
Id. at 926-27. Further, “earnings equal to pre-injury earnings are strong evidence of nonimpairment of earning capacity. However, this is not conclusive. It is a rebut-table presumption Id. at 927. Mabus did not provide evidence that his post-injury wages were unreliable. Therefore, he failed to overcome this presumption.
’ ¶ 39. Additionally, even though Mabus earned no wages after 2009, he did not prove that this loss of earnings resulted from his injury. An “incapacity to earn wages and the extent thereof must be supported by medical findings, but the requirement is met when the fact and extent of incapacity is corroborated in part by medical testimony.” Greenwood Utils. v. Williams, 801 So.2d 783, 791-92 (¶31) (Miss.Ct.App.2001) (citation and internal quotations omitted). As previously discussed, the medical evidence did not support a finding of permanent impairment. Further, David Stewart, Mueller’s vocational expert, provided a report that showed no permanent impairment or extensive work restrictions.
¶ 40. To make his findings, Stewart examined all of the medical evidence from Drs. Rodolfo Arriola, Bevering, Lovell, and Murrell, as well as a functional-capacity exam (FCE) performed on August 10, 2005. The FCE found Mabus could perform work in the heavy-work category and lift up to seventy pounds. It also assessed Mabus with a PPI of eleven percent. Stewart attempted to contact Mabus for his report by sending two letters and making at least two calls, to no avail. Therefore, Stewart based his findings solely on the medical records at the time.
¶ 41. In contrast, Mabus’s vocational expert, Lamar Crocker, assessed Mabus with a fifty to sixty percent vocational loss based on his physical and mental limitations. In his report dated March 12, 2008, Crocker found Mabus was restricted to the light-work and sedentary-work categories in contradiction of his FCE assessment. Crocker made these findings based on Ma-bus’s medical records from Drs. Lovell and Murrell and' the FCE. Also, unlike with Stewart, Mabus provided Crocker with testimony through two depositions. However, Crocker failed to supplement his report to include any information after 2008.
1Í 42, Mabus attempted to leave the record open at the hearing in order to allow for Crocker to testify at a later date to supplement his findings. Mueller objected on the grounds that Crocker should not be able to testify to any information after 2008. The AJ agreed with Mueller and allowed the record to remain open for thirty days for Crocker’s deposition, but confined his testimony to his 2008 report. Mabus, however, objected to this limitation, and the AJ ultimately denied the motion,
¶43. On appeal, Mabus claims the AJ improperly restricted Crocker’s testimony as a condition to leaving the record open. However, Mabus fails to support this contention with any legal authority. “This . Court is under no duty to *686 consider the merits of issues where no legal authority is cited.” Colburn v. State, 990 So.2d 206, 216 (¶ 30) (Miss.Ct.App.2008) (citing Drennan v. State, 695 So.2d 581, 585-86 (Miss.1997)). Therefore, we decline to address this contention.
¶44. Regardless, the AJ disregarded Crocker’s testimony as he found the medical records and FCE failed to support Crocker’s conclusions. The Commission affirmed these findings. “[T]his Court will defer to the factual findings of the Commission regarding which expert is more credible if those opinions are supported by substantial evidence,” unless “the finding is clearly erroneous and contrary to the overwhelming weight of the evidence!.]” Eaton Corp. v. Brown, 130 So.3d 1131, 1139 (¶ 39) (Miss.Ct.App.2013) (citation omitted). The AJ considered both vocational reports and gave more credibility to Stewart’s report. Because this reliance did not result in error, the AJ reasonably concluded Mabus failed to show sufficient evidence linking his injury to his loss of wages.
¶ 45. Based on the substantial evidence, Mabus failed to show he suffered from continuous back pain after 2006, and the medical evidence did not support a finding of permanent impairment. Further, Ma-bus could not show how his post-injury wages were unreliable, or that his later loss of wages resulted from his injury. Therefore, we find the AJ’s and the Commission’s decisions denying permanent disability benefits were supported by the substantial evidence. This issue is without merit.

III. Whether the Commission failed to review the relevant medical evidence and erred in denying Ma-bus’s motion for medical treatment.

¶ 46. Mabus submitted a motion for medical treatment on August 11, 2014, nearly one year after the AJ denied Mabus permanent disability benefits. The Commission denied the motion, finding the evidence unsupportive. Mabus contends the Commission erroneously denied his motion without considering all of the evidence presented.
¶ 47. “This Court’s review of workers’ compensation eases is limited to a determination of whether the Commission’s findings are supported by substantial evidence. We are without authority to reverse the Commission’s order unless it is clearly erroneous and against the weight of the credible evidence.” Cornacchione v. Forrest Cty. Gen. Hosp., 755 So.2d 422, 425 (¶ 12) (Miss.Ct.App.1998) (citing Marshall Durbin Cos. v. Warren, 633 So.2d 1006, 1009-10 (Miss.1994)).
¶ 48. First, as a matter of procedure, Mabus failed to cite any legal authority supporting his contention that the Commission wrongly denied his motion. “Failure to cite legal authority in support of an issue is a procedural bar on appeal.” Webb v. DeSoto Cty., 843 So.2d 682, 685 (¶ 10) (Miss.2003) (citing McClain v. State, 625 So.2d 774, 781 (Miss.1993)). We, nevertheless, choose to address the merits of this claim.
¶49. Mabus contends the Commission needed to consider all of the evidence, particularly the evidence marked for identification purposes at the hearing before the AJ, in rendering its decision. Mueller argues that Mabus retained the ability to submit the evidence excluded by the AJ to the Commission.
¶ 50. Procedural Rule 9 provides an avenue for admitting evidence directly to the Commission. Rule 9 states:
Where additional evidence is offered on the review before the Full Commission, *687 it shall be admitted in the discretion of the Commission. A motion for the introduction of additional evidence must be made in writing at least five (5) days prior to the date of the hearing of the review by the Full Commission.
¶ 51. Rule 9 provided Mabus with the means to resubmit the evidence to the Commission before its hearing. Mabus cannot now say the Commission acted unjustly in not considering the evidence when he failed to avail himself of the rule. Further, Mabus asserts the Commission erred in not considering all of the evidence presented before it. But the Commission stated it “thoroughly studied the record and the applicable law” in rendering its decision. Therefore, we cannot assume the Commission did not review the evidence or that the Commission erred in its decision.
¶ 52. As a final point, Mabus argues the Commission erred when it decided to deny the motion without a response from Mueller. Mabus, however, points to no case, statute, or rule that required the Commission to wait for a response before issuing its decision. Therefore, we decline to address this claim.
¶ 53. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, CARLTON, FAIR AND WILSON, JJ., CONCUR. JAMES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. GREENLEE, J., NOT PARTICIPATING.