970 So.2d 218 (2007)
Ralph LESLIE, Appellant
v.
SAIA MOTOR FREIGHT and Fidelity & Guaranty Insurance Company, Appellees.
No. 2006-WC-02065-COA.
Court of Appeals of Mississippi.
December 4, 2007.
*219 Don Oliver Gleason, attorney for appellant.
Michael Reed Martz, attorney for appellees.
Before LEE, P.J., IRVING and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. On November 6, 2006, the Lee County Circuit Court affirmed an order of Mississippi Workers' Compensation Commission denying workers' compensation benefits to Ralph Leslie. The Commission's order was an affirmance of the administrative law judge's order finding that Leslie was not entitled to additional workers' compensation benefits. Aggrieved by this decision, Leslie appeals. He asserts that it was error to find that he had reached maximum medical improvement and that, as such, it was improper to determine whether permanent benefits were appropriate.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Ralph Leslie worked in Tupelo as a truck driver for Saia Motor Freight from November 2000 until January 2002. On September 14, 2001, while moving a large box inside a trailer, Leslie fell and suffered a lower back injury. Leslie was instructed to go to the Med-Serve Clinic where he was examined, had some x-rays taken, and was given medications. Med-Serve then referred Leslie to Dr. Victor Gray who performed MRIs, examined him for over two months, and eventually referred him to Hill Rehabilitation for a functional capacity evaluation to determine what type of work Leslie could perform. Specifically, Dr. Gray found that Leslie had reached maximum medical improvement, that he was poorly motivated, and that his complaints were exaggerated and "secondary to the preexisting degenerative changes."
¶ 4. After being released by Dr. Gray and being informed that he could return to work, Leslie requested to see a doctor of his own choosing. He went to Memphis to see Dr. John Brophy who also cleared him to return to work. Dr. Ernest Lowe also examined Leslie. Dr. Lowe found no physical problems with him and recommended that Leslie visit a neurosurgeon if the pain continued. Leslie had already visited Dr. Brophy, however, who was a neurosurgeon, and Dr. Brophy found nothing to support Leslie's physical complaints. Doctors W. Craig Clark and Tom McDonald also performed neurological examinations on Leslie but discovered no abnormal physical findings.
¶ 5. Shortly after being cleared to work, approximately January 8, 2002, Saia released Leslie and another driver from employment because business was slow and they were the least senior employees. Following his termination from Saia, Leslie returned to work with other trucking companies. He first took a job with Southern Dreams, but after a few months he was again laid off because business was slow. Next, he worked for J & B Services delivering furniture. He was with J & B *220 for eleven months until he was fired due to complaints received from J & B's most important customer regarding Leslie's unusual behavior. Specifically, Leslie had asked the customer to watch his truck because he thought he had been followed. Both of these jobs involved duties similar to his duties with Saia. At J & B, Leslie volunteered for the Hancock Fabric jobs, which were more physically demanding and required him to travel long distances and lift heavy furniture. Leslie testified that he made approximately $900 and $1,500 per week at those two jobs, respectively.
¶ 6. At trial, the parties stipulated to the following facts: (1) Leslie suffered an admittedly compensable injury on September 14, 2001; (2) Leslie's average weekly wage with Saia at the time of the accident was $696.04; and (3) Saia paid temporary total disability benefits for the period of September 15, 2001 until January 18, 2002, totaling $6,012.74.
¶ 7. Leslie testified that he experienced pain since his injury and that it had affected his work performance. He also said that he had not had any accidents following his accident on September 14, 2001. Leslie testified that he could no longer meet the requirements for employment with Saia because of the injury.
¶ 8. Todd Bates, owner and president of J & B, testified that he never had any problem with Leslie's work performance while he was at J & B. He said he was forced to let Leslie go after J & B's largest customer called in a complaint about Leslie acting strangely while making a delivery. Bates also testified that, on Leslie's employment application, Leslie claimed no work restrictions and stated that there was no reason that he could not perform the job. When Bates learned of the prior workers' compensation benefits and questioned Leslie about it, Leslie assured him that he was physically fit.
¶ 9. The administrative law judge entered an order holding that Leslie was not entitled to permanent disability benefits. He placed the date of maximum medical improvement at January 8, 2002, which was the date established by Dr. Brophy, Leslie's physician of choice. The judge noted that the opinions of the physicians who examined Leslie were that he suffered no permanent impairment and that he could return to work with no restrictions. The Full Commission affirmed the findings of the administrative law judge, and Leslie appealed to the Circuit Court of Lee County, which affirmed the order of the Commission. Leslie now appeals that decision.

ISSUES AND ANALYSIS
¶ 10. Leslie alleges that it was error to find that he reached maximum medical improvement on January 8, 2002. Furthermore, he argues that because he had not reached maximum medical improvement, it was not proper at the time to determine whether permanent benefits were appropriate.
¶ 11. The Mississippi Workers' Compensation Commission is the ultimate fact-finder. Vance v. Twin River Homes, Inc., 641 So.2d 1176, 1180 (Miss.1994). Where, as here, the Commission adopts the findings of the administrative law judge without presenting its own findings of fact, this Court will examine the findings of fact made by the administrative law judge. McDowell v. Smith, 856 So.2d 581, 585(¶ 10) (Miss.Ct.App.2003). The findings of the Workers' Compensation Commission are binding on this Court when the Commission's decision is supported by substantial evidence. Guardian Fiberglass, Inc. v. Lesueur, 751 So.2d 1201, 1204(¶ 7) (Miss.Ct.App.1999). As such, we will not overturn the Commission's findings of fact *221 unless they were arbitrary and capricious. Id.
¶ 12. The initial burden of proof is on the claimant to show that he has suffered a loss of wage-earning capacity as the result of a work-related injury. Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 12 (Miss.1994). Unless common knowledge suffices, medical evidence must prove not only the existence of a disability but also its causal connection to the employment. Howard Indus., Inc. v. Robinson, 846 So.2d 245, 259(¶ 49) (Miss.Ct.App.2002).
¶ 13. In this case, the administrative law judge found that Leslie had not met his burden of proving that he suffered from any disability nor from a loss of wage-earning capacity. There are a number of facts that support this finding. First, all of the physicians that Leslie visited cleared him to return to work with no restrictions. None of them found that Leslie suffered from any physical problems. Also, Leslie worked at a number of jobs after leaving Saia, which showed that he was able to resume his regular job duties. All of the trucking jobs required similar job duties. While he testified that the pain in his back continued, Leslie never received any complaints about his work performance. Bates testified that Leslie never complained about his back and, quite the opposite, actually told him that it was not a problem. Furthermore, according to Bates's records, Leslie earned $62,500 in the eleven months he worked for J & B.
¶ 14. While Leslie argues that the order of the administrative law judge essentially ruled that he "had not been hurt at all," such is not the case. The parties stipulated that Leslie suffered an admittedly compensable injury at work, and the judge stated this fact in his opinion. The judge did find, however, that the medical evidence established that Leslie had reached maximum medical improvement in January 2002 and that he was cleared to return to work with no restrictions. The judge also found that Saia paid $6,012.74 in benefits during the period from the date Leslie was injured until he was cleared to return to work. Thereafter, Leslie obtained various other trucking jobs, some of which paid significantly more than Saia.
¶ 15. After reviewing the facts and the findings of the administrative law judge, we do not find them to be arbitrary nor capricious. The judge's findings are supported by substantial evidence indicating that Leslie had reached maximum medical improvement, was cleared to return to work by each doctor he visited, suffered from no permanent disability, and had successfully held a number of jobs following his release from Saia. We do not find the trial court was in error in affirming the ruling of the Commission; therefore, this issue is without merit.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.