# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CP-01935-COA

**FREDDIE DOBBS**                                                                                  **APPELLANT**

**v.**

**WILLIAM R. CRAWFORD, PATRICK STEELE,**                          **APPELLEES**
**TIMOTHY STEELE, JIMMY LOWREY, MAVIS**
**LOWREY, SANDRA STORMENT, LINDA C.**
**WHITLEY, THOMAS E. COOPER AND JIMMY**
**LOWREY**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/01/2013 |
| TRIAL JUDGE: | HON. JACQUELINE ESTES MASK |
| COURT FROM WHICH APPEALED: | TISHOMINGO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | FREDDIE DOBBS (PRO SE) |
| ATTORNEY FOR APPELLEES: | PHIL R. HINTON |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| TRIAL COURT DISPOSITION: | GRANTED SUMMARY JUDGMENT IN FAVOR OF APPELLEES |
| DISPOSITION: | AFFIRMED – 03/31/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., ROBERTS AND MAXWELL, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     Freddie Dobbs appeals from a summary judgment granted by the Tishomingo County Chancery Court, which reformed, quieted, and confirmed title to several tracts of land, and awarded fees and damages to Appellees (Plaintiffs) William R. Crawford, Patrick Steele, Timothy Steele, Jimmy Lowrey, Mavis Lowrey, Sandra Storment, Linda C. Whitley, Thomas E. Cooper, and Jimmy Lowrey.

¶2.     Finding that summary judgment was proper, we affirm.

FACTS

¶3.     Nellie Pruitt was married to Will Pruitt, and they had five daughters: Joy Cooper, Laura Johnson, Ruth Dempsey, Ann Jourdan, and Edith Crawford. On March 28, 1942, Luther Kennedy conveyed to Nellie 102 acres of land located in Tishomingo County, Mississippi. During her lifetime, Nellie conveyed all of the land, except 24.12 acres (the Nellie Pruitt property). Nellie died intestate on August 1, 1974. Nellie was survived by her husband and her five daughters, who inherited, in equal shares, the Nellie Pruitt property. Will conveyed his undivided one-sixth interest in the Nellie Pruitt property to Joy. Joy then conveyed the interest that she received from her father to herself and her sisters, which in effect gave each sister an equal portion of the estate. The family hired Wayne Lambert to survey and divide the Nellie Pruitt property into five tracts (the Lambert survey), so each sister would have an equal portion of land. Based on the Lambert survey, the sisters executed five deeds, which were filed among the land records of Tishomingo County.

¶4.     In 2007, Tom Cooper, Joy's husband, commissioned another survey, which was performed by C. Milton Guice, a professional engineer and licensed land surveyor. After conducting his survey (the Guice survey), Guice discovered that the deed descriptions conveyed to the five sisters contained an error. According to the Guice survey, the following errors were apparent:

   A.    A portion of the Nellie Pruitt property, 331 feet North and South by approximately 420 feet East and West, was not covered by the

2

erroneous deeds;

B. All five tracts of land conveyed to the sisters lay 331 feet to the South of the North line of the real estate owned by Nellie Pruitt at the time of her death;

C. Four of the tracts (all except Joy Cooper's tract) encroach upon or overlap other property owners and, in one instance, the public road; and

D. The deeds as originally prepared per the Lambert survey do not match the existing fence and other possession lines.

¶5. Freddie, Laura's son, is the present owner of the land originally conveyed to Laura. During trial, Freddie testified that he relied on a different survey he had commissioned in 2007 from Horace Ledgewood (the Ledgewood survey), which, according to Freddie, confirmed that the existing property lines were correct. Based on the Ledgewood survey, Freddie bulldozed several trees, razed the Defendants' land, and tore down a fence on the portion of the property where the title was disputed.

¶6. In September 2011, the Plaintiffs filed a complaint to reform the deeds, remove clouds on titles, and quiet and confirm titles, and for injunctive relief and damages against Freddie and Donald Dempsey, among other individuals, for trespass.[1] In addition, Plaintiffs sought expert witness fees and attorney's fees. During the pendency of this action, Donald died, and his estate was replaced as a Defendant. The complaint was amended in October 2012, to

[1] The chancery court entered defaults for the other named Defendants: Maria Reynolds, Andrea Dempsey, Peggy Dempsey, Shirlean Schnackenberg, Janice McCleary, and "all remaining [D]efendants known and unknown that failed to answer the amended complaint."

3

reflect the change.[2]  On May 22, 2013, the Plaintiffs filed a motion for a partial summary judgment.

¶7.     On June 18, 2013, a hearing was conducted wherein Plaintiffs provided the Guice survey; Guice's affidavit; deraignment of title; and an affidavit from the last surviving Pruitt sister indicating that the intent, at the time that the Pruitt property was partitioned, was for each sister to have an equal plot.  Freddie, proceeding pro se, testified that he had his land surveyed by Ledgewood in 2007, and that he was told that his current property lines were correct.  He also stated that his mother always told him that she believed she owned more of the Nellie Pruitt property but did not "want to fuss with the family."  He further stated that he was "fighting for what was his mother's land" and that the piece of land that "we're arguing over" was given to his mother by his grandmother in 1977.  Freddie did not admit anything into evidence.  On June 18, 2013, the chancery court reformed the deeds by allowing the description to be corrected, and quieted and confirmed title to the Pruitt property in accordance with the Guice survey.

¶8.     Another hearing was held in which the chancery court heard testimony on the remaining issues of injunctive relief, damages, court costs, expert-witness fees, and attorney's fees.  At this hearing, Tom testified that Freddie bulldozed Tom's and part of Jimmy Lowrey's property, "pushing stuff down," including trees and a fence, resulting in

---

[2] Donald's estate settled with the Plaintiffs and is not a party to this appeal.

damage to a culvert on Tom's property.[3]  Tom further testified that he was able to take pictures of the trees that had been removed and that he talked to Kevin Lambert to obtain an estimate for debris clean-up and the cost of restoring the property to its original state. Additionally, Tom identified receipts of payments made to: (1) Milton Guice for the survey, (2) Harold Jackson for the deraignment of title, (3) Kevin for debris clean-up, and (4) Attorneys Richard Bowen and Phil Hinton for attorney's fees.

¶9.     Jimmy testified regarding Freddie's action of razing Jimmy's land and removing a fence, and the cost estimate to repair his land that Freddie had damaged.  He also testified to the amount of attorney's fees he had paid to bring the action against Freddie and asked to be reimbursed.

¶10.    In its final judgment, dated October 1, 2013, the chancery court found, in pertinent part, the following:

> The evidence is that the Defendant, Freddie Dobbs, trespassed on the properties of the Plaintiffs, Jimmy Lowrey, Mavis Lowrey, Sandra Storment, Linda C. Whitley and Thomas E. Cooper, and did damage by removing fences, removing trees and brush, and changing the appearance of their lands.  The Defendant, Freddie Dobbs, admitted intentionally performing those acts and gave as [an] explanation his statement that he had a conversation with a surveyor, Horace Ledgewood, and that he reviewed the survey done by Horace Ledgewood, which led him to the conclusion that he owned that land he entered.  Mr. Ledgewood did not testify and his survey was not offered nor admitted into evidence.  There is no evidence whatsoever to support the explanation of the Defendant, Freddie Dobbs.
>
> It appears from clear and convincing evidence that the actions of . . . Freddie

---

[3] Jimmy Lowrey is the successor-in-title to Edith Crawford.

5

Dobbs . . . were either willful or grossly negligent and wanton, and that the Plaintiffs are entitled to recover actual damages, and attorney's fees.

The attorney's fees agreed upon and paid by Plaintiffs herein were reasonable, and the time expended by Mr. Bowen and by Mr. Hinton in representing the Plaintiffs [is] spelled out in the itemized bills, Exhibits 13 and 15, [is] fair and reasonable.

As a result of the actions of . . . Dobbs . . . , which involved the removal or deadening of trees, the Plaintiffs were required, to successfully prosecute this case, to obtain the services of a surveyor herein. Since the actions of said Defendant[] included the cutting down and deadening of trees, the Plaintiffs are entitled to reasonable expert witness fees and expenses and reasonable attorney's fees. The Plaintiffs have shown damages to their properties and for restoration of their properties. They are entitled to reasonable actual damages for trespass and property damage, and attorney's

Freddie now appeals.

## DISCUSSION

¶11.    In *City of Jackson v. Rebuild America Inc*., 77 So. 3d 1105, 1109 (¶9) (Miss. Ct. App.

2011) (internal citations and quotation marks omitted), we stated that

[t]his Court reviews a trial court's grant or denial of a motion for summary judgment de novo. Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In opposing the motion, the non-movant may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. All evidence must be viewed in the light most favorable to the non-moving party. If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment should be entered in that party's favor.

¶12.    "In boundary disputes, a determination of the legal boundary between properties is a

6

question of fact for the chancellor." *Kleyle v. Mitchell*, 736 So. 2d 456, 459 (¶8) (Miss. Ct. App. 1999) (citing *Farris v. Thomas*, 481 So. 2d 318, 318 (Miss. 1985)). "The same standard applies to questions involving the accuracy of a survey." *Id.* (citing *Hicks v. Bolton*, 223 So. 2d 522, 522 (Miss. 1969)). The trial court's decision will not be disturbed on appeal unless this Court finds that the trial court committed manifest error. *Id*.

¶13. At the outset we note that Freddie, as was the case in the court below, is proceeding pro se. In his brief, he lists various grievances, but offers little argument and law. "While pro se litigants are afforded some leniency, they 'must be held to substantially the same standards of litigation conduct as members of the bar.'" *Sumrell v. State*, 972 So. 2d 572, 574 (¶6) (Miss. 2008) (quoting *Perry v. Andy*, 858 So. 2d 143, 146 (¶13) (Miss. 2003)).

¶14. Freddie argues that he was "waiting for his chance to tell his side" and did not know that he needed to produce affidavits from experts. He further states that the chancery court erred in granting attorney's fees and expert fees. Freddie also asserts that he did not "trespass" since he believed the disputed land to be his.

¶15. The record indicates that the chancery court allowed Freddie to make statements on his behalf after hearing from the other witnesses. Freddie did not present any evidence to support his contention other than his own testimony that he believed his mother, and now he, owned the land in dispute. While Freddie explained that he relied on the Ledgewood survey, he failed to produce, as the trial court noted, either the survey or testimony from Ledgewood to support Freddie's contention. In short, based on the evidence presented, summary

7

judgment was proper, and the Plaintiffs were entitled to an order quieting and confirming their titles.

¶16.    In addition, evidence as to damages and fees was admitted and was not rebutted. On the issue of damages, the chancery court held the following:

> The Plaintiffs, Thomas E. Cooper, Sandra Storment and Linda C. Whitley, are awarded a judgment against the Defendant, Freddie Dobbs, for nominal and actual damages in the sum of $12,746.20, which shall bear interest at the rate of 8% per annum, from the date of judgment herein until paid in full;
>
> The Plaintiffs, Jimmy and Mavis Lowrey, are awarded a judgment against the Defendant, Freddie Dobbs, for nominal and actual damages in the sum of $5,000.00, which shall bear interest at the rate of 8% per annum, from the date of judgment herein until paid in full;
>
> The Plaintiffs are awarded a judgment against Defendant, Freddie Dobbs, for attorney's fees in the sum of $10,000.00 for the services of Phil R. Hinton and $3,000.00 for the services of Richard Bowen, for a total judgment for attorney's fees in the sum of $13,000.00, which shall bear interest at the rate of 8% per annum from the date of judgment herein until paid in full;
>
> All Plaintiffs are awarded a judgment against the Defendant, Freddie Dobbs, for expert witness fees paid to Milton Guice, in the sum of $3,250.00, together with interest at the rate of 8% per annum, from the date of judgment herein until paid in full[.]

¶17.    The chancery court found, and Freddie admitted, that he removed trees from land that was determined by the Guice survey to be owned by the Plaintiffs. In light of this finding and admission by Freddie, Mississippi Annotated Code section 95-5-10 (Rev. 2013) clearly applied, and attorney's and expert fees were warranted. The section, in pertinent part, states:

> (1) If any person shall cut down, deaden, destroy or take away any tree without the consent of the owner of such tree, such person shall pay to the owner of such tree a sum equal to double the fair market value of the tree cut down,

deadened, destroyed or taken away, together with the reasonable cost of reforestation, which cost shall not exceed Two Hundred Fifty Dollars ($250.00) per acre. *The liability for the damages established in this subsection shall be absolute and unconditional and the fact that a person cut down, deadened, destroyed or took away any tree in good faith or by honest mistake shall not be an exception or defense to liability. To establish a right of the owner prima facie to recover under the provisions of this subsection, the owner shall only be required to show that such timber belonged to such owner, and that such timber was cut down, deadened, destroyed or taken away by the [D]efendant, his agents or employees, without the consent of such owner.*

*\* \* \* \**

*(3) All reasonable expert witness fees and attorney's fees shall be assessed as court costs in the discretion of the court.*

(Emphasis added). Furthermore, the Plaintiffs were entitled to compensation for the other property damage not related to the removal of the trees. *See Patterson v. Holleman*, 917 So. 2d 125, 135 (¶29) (Miss. Ct. App. 2005) (citing *Smith v. Parkerson Lumber Inc.*, 888 So. 2d 1197, 1203 (¶15) (Miss. Ct. App. 2004)) (where the defendant's trespass to land caused property damage in addition to the removal of trees, the trial court held that Plaintiffs were eligible for compensation). Again, as noted, estimates for the restoration of Tom's and Jimmy's properties, expert fees, and attorney's fees were admitted into evidence and were not rebutted by Freddie. Therefore, the amount assessed against Freddie for his actions was supported by the evidence and the law.

¶18. After a complete review of the record, we agree with the chancery court that there are no genuine issues of material fact, and summary judgment was proper. Therefore, we affirm.

¶19. **THE JUDGMENT OF THE CHANCERY COURT OF TISHOMINGO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO**

9

**THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., NOT PARTICIPATING.**