# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-WC-00894-COA

**MARY TILLMAN WHITE**                                                    **APPELLANT**

**v.**

**THE HOME DEPOT AND NEW HAMPSHIRE**                          **APPELLEES**
**INSURANCE COMPANY**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/19/2022 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEY FOR APPELLANT: | MARY TILLMAN WHITE (PRO SE) |
| ATTORNEYS FOR APPELLEES: | P. SHARKEY BURKE JR. TERRY B. GERMANY |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | AFFIRMED - 04/23/2024 |
| MOTION FOR REHEARING FILED: | |

## CONSOLIDATED WITH

## NO. 2022-WC-00905-COA

**MARY TILLMAN WHITE**                                                    **APPELLANT**

**v.**

**THE HOME DEPOT AND NEW HAMPSHIRE**                          **APPELLEES**
**INSURANCE COMPANY**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/19/2022 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEY FOR APPELLANT: | MARY TILLMAN WHITE (PRO SE) |
| ATTORNEYS FOR APPELLEES: | P. SHARKEY BURKE JR. TERRY B. GERMANY |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | AFFIRMED - 04/23/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., WESTBROOKS AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.     This Court consolidated these two appeals involving the same parties and common facts. In Appeal No. 2022-WC-00905-COA, after Mary Tillman's[1] employer admitted compensability and provided medical care for a January 2016 work-related injury, the Mississippi Workers' Compensation Commission denied Tillman's request to choose another physician, to continue medical treatment, and to receive payment for disability benefits. Then, in Appeal No. 2022-WC-00894-COA, the Commission denied Tillman's claim resulting from a March 2016 incident due to a lack of evidence showing a compensable work-related injury. Tillman appeals the Commission's rulings on both claims, and after review, we find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     The two cases involved in this consolidated appeal arise from workers' compensation claims that Tillman brought against her employer The Home Depot and its insurance carrier New Hampshire Insurance Company (collectively "Home Depot"). The following sequence of events pertains to both cases.

### A.     Background

¶3.     Tillman is a resident of DeSoto County, Mississippi. In February 2011, Tillman began working for Home Depot and was still employed as a Freight Associate there when the

---

[1] The court documents refer to the Appellant as "Mary Tillman White," but the evidence from her deposition shows she testified that her full name is "Mary Jane Tillman." In light of her deposition testimony, we will use "Tillman" when referring to the Appellant.

2

incidents giving rise to her claims occurred in January and March 2016. She continued to work at Home Depot until October 2016. She testified she took "medical leave" at that time but was later informed by someone in Human Resources that her employment had been terminated due to her failure to return to work after her medical leave time expired. Tillman stated that when she left Home Depot in October 2016, she was working Monday through Friday, part-time, for approximately thirty-six hours a week and earning a wage of $11.00 per hour.

¶4.     Describing her first injury during the hearing before the administrative judge (AJ), Tillman testified that on January 15, 2016, she hurt her back when she was helping a customer lift floor tiles onto a cart, and she felt something pop.[2] She reported her injury to the assistant manager who then reported it to the store manager, Norma Kinkaid. Tillman filled out an incident report and she continued to work the rest of her shift. The day after the incident Tillman went to the emergency room seeking treatment for back pain. She continued to report to work after her incident and stated that the store manager and other employees harassed her about her injury and threatened to fire her if she had to miss days due to the injury. After seeing various medical providers for her pain, she presented to Dr. Douglas Cannon with the Campbell Clinic on March 17, 2016, for a workers' compensation initial evaluation. Dr. Cannon returned her to work with light-duty restrictions. Tillman claimed that she could not walk the concrete floors at work because of her injury, so the managers initially

---

[2] Before the occurrence of her work incidents at issue, Tillman testified that she had sustained prior injuries to her neck and shoulder from a motor vehicle accident in 1994 and prior injuries to her knee in 1998 or 1999 from jumping over an object.

allowed her to use the mobile cart for disabled customers. But she said after about a month, the managers told her she was no longer permitted to use the customer carts.

¶5.     Tillman asserted that a second incident occurred at work and caused her injury on March 25, 2016, which she claims was only a few days after her cart privileges ended. Tillman stated that she was walking to her work area when something in her right side popped and she felt pain in her rib cage area that went up to her neck and upper right side. Tillman testified that she told her store manager Norma and another manager Laveta McCullor, but no report was filed at that time. She explained that she continued to talk to different managers because she was trying to file a second injury claim, but according to Tillman, the managers refused to allow her to file a second claim.  She proceeded to contact The Home Depot's insurance carrier New Hampshire Insurance Company ("Carrier") and reported that she was not allowed to file a second claim. Someone with the Carrier instructed her to go back to the store and report it to a manager. Tillman then sent an e-mail to Home Depot's insurance carrier on May 6, 2016, informing the carrier about her second incident, and requesting to go to her own physician. The insurance carrier instructed her that she needed to report her alleged new injury to the store. Ten days later, on May 16, 2016, Tillman emailed her manager Norma requesting to file a claim for her March 2016 incident. She then filled out an "Incident Witness Statement" dated May 17, 2016, reporting her alleged injuries from the second incident. Tillman stated she did not seek medical care immediately after her incident in March 2016 but, rather, kept going to her regular visits with the doctor who was treating her first injuries. According to medical records, Tillman did not inform the physician

4

about her second injury until August 2016.

¶6. Dr. Cannon released her to full-duty work without restrictions on October 26, 2016, and determined no further treatment was necessary. Tillman's testimony indicated she disagreed with Dr. Cannon's assessment and sought treatment with a different medical provider who she claims took her off work indefinitely. As of the day of the merits hearing, she had not held another job after her employment with Home Depot ended. Tillman admitted she did not attempt to find another job and even testified that she had no intentions of looking for other employment. According to Tillman, she was still physically unable to work and continued to suffer from pain.

### B. Medical Chronology

¶7. On January 16, 2016, the day after the initial injury occurred, Tillman went to the emergency room at Methodist Hospital in Olive Branch. She explained that she was given treatment there and then referred to the Byhalia Family Medical Clinic because they would see her even though she did not have medical insurance. Tillman asserted that on January 25, 2016, her store manager Norma said that she needed to see a doctor and suggested that she go to Baptist Minor Medical Center. Then on February 9, 2016, Tillman's back pain continued to worsen so she went to the Byhalia Clinic based on Methodist Hospital's prior recommendation. At the Byhalia Clinic, she was examined by a physician who intended to find a specialist to treat her back injury. Thereafter, Tillman sought treatment from Dr. Richard Waller at the Family Medical Center in Marks, Mississippi. Tillman testified at her deposition that she chose to go to Dr. Waller because he had previously provided her

5

unrelated medical care. Dr. Waller advised her to seek treatment with the physician the Carrier recommended. She testified the Baptist Minor Medical Center then referred her to Dr. Douglas Cannon of Campbell Clinic Orthopaedics.

¶8.     Dr. Cannon practices physical medicine and is a rehabilitation physician. Tillman saw Dr. Cannon for the first time on March 17, 2016, for a workers' compensation evaluation complaining of back pain and problems with prolonged standing and walking. After examining Tillman, Dr. Cannon sent her for physical therapy and placed her at light-duty work with no lifting over twenty-five pounds, no repetitive lifting, no bending, no twisting, and changing her position from sitting to standing as needed. On April 22, 2016, Tillman went to Dr. Cannon again for further treatment of her back pain. She reported numbness, tingling, and pain down her left leg. Dr. Cannon's medical reports note that he found her exam "somewhat inconsistent," so he sent her for a lumbar MRI and a nerve conduction study of her left leg. On May 6, 2016, Dr. Cannon saw Tillman for a workers' compensation reevaluation, and she reported feeling back pain radiating downward. He reviewed the results of her MRI and nerve study and found disc degeneration at L2-L3 and a left posterolateral disc herniation at L1-L2. Dr. Cannon suspected the L1-L2 herniation was causing her back pain. His report also noted that he saw no medical evidence to cause her left leg to drag and was concerned some psychosocial issues were going on instead. He sent Tillman for additional therapy and maintained her light-duty work restrictions.

¶9.     Tillman returned to Dr. Cannon again on June 15, 2016, reporting that she was not getting better and felt numbness and weakness in both legs. Dr. Cannon suggested pool

6

therapy, which she rejected, and then suggested a left-sided epidural to address the L1-L2 disc. But he also cautioned her that the epidural was "not going to stop the full constellation of symptoms because there is just nothing else to explain that." Dr. Cannon reported that Tillman then asked if there was "somebody higher up" than him whom she could see to help her with her problem, and he advised her to get a second opinion if she wanted. Tillman elected to pursue the epidural option, so Dr. Cannon requested approval from the Carrier for an epidural steroid injection. His report noted that if she did not get better with an epidural, she either needed to get a second opinion, or he would send her for a functional capacity evaluation (FCE) and put her at maximum medical improvement (MMI). Records from the following weeks indicated she was experiencing increasing pain with regular therapy, and Dr. Cannon re-urged pool therapy.

¶10.   On August 17, 2016, Tillman saw Dr. Cannon for a second evaluation specifically related to her March 2016 incident. She reported neck pain and intermittent right-arm pain with numbness and tingling but reported no specific injury. Dr. Cannon's report noted that nothing really caused the neck and arm pain; she was just standing on the concrete floor when she felt some kind of pop in her mid back, which then radiated up her spine to her neck and arm. He sent Tillman for cervical spine x-rays, which showed disc degeneration and spondylosis. Based on his review of the results, he found only age-related degenerative changes. He specifically wrote that he "did not see anything serious" and was "really not sure how the neck symptoms are related to standing on hard concrete surfaces at work." He suggested conservative treatment, beginning with physical therapy. Dr. Cannon kept her at

light-duty work with the added restriction of avoiding any repetitive work at or above shoulder level.

¶11. Two days later, Dr. Cannon performed a lumbar epidural steroid injection for Tillman's L1-L2 spine, which had been requested as part of the treatment for her back injury that resulted from the first work incident. On September 1, 2016, Dr. Cannon saw Tillman for a workers' compensation reevaluation. She reported pain in her low back still, as well as continued pain in her neck. Dr. Cannon noted that she did not really get any benefit from the epidural based on her pain logs. He reported that he reviewed her lumbar MRI and did not have a good explanation for the low back pain of which she still complained. Dr. Cannon concluded that there was really nothing else to do for her because no other significant pathology correlated with the pain she alleges. He sent her to get an FCE for her whole spine condition to set permanent restrictions but kept her light-duty restrictions the same for the time being.

¶12. Tillman completed her FCE on October 21, 2016. She then saw Dr. Cannon on October 26, 2016, at which time he wrote that he reviewed her FCE results and found her FCE invalid due to psychological limitations of functional tasks. He noted that due to her invalid FCE, he had no impairment rating and no clear work restrictions for her. Dr. Cannon determined that from a medical standpoint, there was no reason that she could not return to work with full duties. Consequently, he placed her at MMI and released her to return to full-duty work without any restrictions on that date, October 26, 2016.

¶13. Subsequent proceedings would later result in Dr. Robert McGuire completing an

independent medical evaluation (IME) of Tillman on October 31, 2019. After reviewing the films and all the medical records from not only Dr. Cannon but also Tillman's treating physician,[3] including the nerve study and both MRI exams, he would agree with Dr. Cannon's conclusions. His report stated, "I do not see any evidence of anything that needs to be addressed from the surgical standpoint and nothing that I can attribute from the injury that is causing her present symptoms." He further noted that Tillman's tests showed degenerative changes that were pre-existing, but again, that did not correspond to her present complaints. Dr. McGuire would agree with Dr. Cannon that Tillman was at MMI and that there was no basis for an impairment rating or limitations as a result of her work-related injury.

### C. Procedural History

¶14. Tillman filed a petition to controvert on January 15, 2018, alleging an injury to her back and body as a whole from the January 15, 2016 incident. Tillman filed a second petition to controvert on January 23, 2018, alleging injuries to her back, neck, right upper extremity, and body as a whole, from the incident on March 25, 2016. Home Depot admitted compensability of the January 2016 claim as a work-related injury but denied compensability

---

[3] Tillman's testimony indicated that she no longer saw Dr. Cannon after October 26, 2016, and instead began seeking treatment from Dr. Ying Xu. She testified at her deposition that after she went to Dr. Xu, she received referrals to at least two other doctors. She also stated that she continued to receive medical treatment from these other doctors from October 2016 through at least as recently as 2019. At the merits hearing, Tillman attempted to submit various medical reports and physician notes from some of the doctors who treated her after October 2016. None of these submissions were entered into the record as evidence, however, because Tillman had not followed the proper procedure for submitting medical reports in a workers' compensation claim. Her submissions were only placed in the record for identification purposes.

of the March 2016 claim. Each party subsequently filed separate motions to consolidate Tillman's two workers' compensation claims, and the AJ entered an order consolidating the claims on September 26, 2018.

¶15.    On July 3, 2019, the AJ ordered the previously discussed IME by the orthopedic surgeon Dr. McGuire. After Tillman filed pre-hearing statements on October 30, 2020, and after Home Depot filed statements on December 3, 2020, a motion was made on Tillman's behalf on June 9, 2021, stating that she had retained different counsel. This motion by her newly retained lawyer, Jay Foster, requested a continuance of thirty days to respond and answer any motion or discovery request and for an additional sixty days to conduct Tillman's discovery. That same day, Home Depot filed a motion to strike Tillman's discovery requests, arguing Home Depot received the requests well after the discovery period had closed back on March 23, 2019. The following day, Tillman's original counsel of record filed a motion to withdraw from her case and requested permission to assert a lien against Tillman for legal services rendered. The AJ granted the motion, allowing Keith Pearson to withdraw as counsel and to file an itemized statement of services rendered to Tillman for a lien.

¶16.    On June 14, 2021, Home Depot filed its response in opposition to Tillman's motion for time, arguing that "the matter was ripe for adjudication, as it had been fully developed medically and procedurally for quite some time," and that the case was on the "eve of a hearing on the merits." Less than a month after the substitution of Tillman's counsel, Attorney Foster filed a motion to withdraw and requested permission to file a lien against Tillman as well. His motion stated that "[a] conflict has arisen between Mary Tillman and

10

Jay Foster which cannot be resolved at this time." The AJ subsequently granted the motion, allowing Foster to withdraw and file an itemized list of legal services rendered to assert a lien.

¶17. A hearing on Tillman's claims was scheduled for July 7, 2021, and Tillman appeared without her attorney and told the AJ she had terminated their contract before the hearing. The AJ allowed Tillman a continuance of ninety days to hire another attorney or proceed pro se, representing herself. The hearing was rescheduled to October 12, 2021, and at that time, Tillman still appeared without counsel and ultimately proceeded pro se in pursuit of her claims.

¶18. The AJ entered an order on February 22, 2022, rendering her decision on each claim. As to the alleged March 2016 incident, the AJ noted that Dr. Cannon and Dr. McGuire specifically stated the neck and arm symptoms were not related to a work incident and found that the medical evidence did not support her claim of injuries to her neck or right upper extremity. The AJ's order denied Tillman's workers' compensation claim related to the alleged March 2016 incident, including her claims for further medical treatment from the physician of her choice.

¶19. For the January 2016 injuries, the AJ stated that Home Depot agreed that her back injury was a compensable work-related injury. The AJ recounted that Tillman was treated by Methodist Hospital, Baptist Minor Medical Center, the Byhalia Clinic, the Family Medical Center, and the Campbell Clinic. Further, the AJ specifically found that Tillman had been treated by Dr. Cannon at the Campbell Clinic for a period of seven months, which exceeded

11

the six-month statutory threshold for a physician to become the employee's choice (pursuant to statutory requirements that will be detailed later). Based on this evidence, the AJ found that Tillman had her chosen physician and was not entitled to another choice under workers' compensation law.

¶20.    Next, the AJ considered the issue of temporary disability benefits. Upon reviewing the medical evidence, Dr. Cannon returned Tillman to work with light-duty restrictions on March 17, 2016, and Home Depot accommodated her restrictions. The AJ found that Tillman's wage statements Home Depot provided indicated that she continued to work for Home Depot until October 2016 "without missing any work." The order also noted that Tillman made a statement alleging she thought she had been off work for about a month, but Tillman failed to testify as to any of the dates she was off work to prove her allegations. Consequently, the AJ found no proof to support an award of temporary disability benefits for the January 2016 injuries.

¶21.    Lastly, the AJ's order considered the issue of the existence and extent of permanent disability attributable to Tillman's January 2016 work-related injuries. The AJ found that Tillman was released to full-duty work on October 26, 2016, and was not assigned any physical restrictions or medical impairment rating. Additionally, she stopped going to work for Home Depot in October 2016 but did not look for work within her self-proclaimed limitations after leaving Home Depot. As a result, the AJ concluded that Tillman had not proved that a permanent disability existed from her January 2016 injuries and, thus, also had not proved that she was entitled to permanent disability benefits.

¶22. Thereafter, on March 9, 2022, Tillman filed a petition for the full Commission to review the AJ's order. She contended that the AJ's order was unsupported and contrary to the evidence and the law. Tillman argued that the AJ erred because she provided documentation to show that she missed time from work and to show that her time off was due to her injury and seeking medical treatment. Tillman also alleged that the AJ's ruling was error on the grounds that she presented evidence that she was not at MMI and still needed further medical treatment based on records from September 2016 through 2021.

¶23. On June 27, 2022, Tillman filed a motion with the Commission seeking to introduce additional evidence for consideration. She claimed that she was not allowed enough time to prepare for her case before the hearing and requested that two specific items be admitted into evidence. The first item is a one-page document that lists information for Baptist Minor Medical Center at the top, and below that appears an authorization for initial treatment and release of medical information form from Home Depot. Tillman asserted that this additional evidence showed that Home Depot acknowledged she sustained an injury on March 25, 2016, and showed that her injury was cervical and thoracic, not lumbar. She argued this evidence was probative because it showed that she sustained an injury while working for Home Depot and proved that she is entitled to compensation. The second item includes two printouts of email communications with Pearson. According to Tillman, one email shows Pearson requesting a phone call with a date stamp of April 1, 2021, and the other email shows her sending an email to Pearson with the details from their phone conversation. She argued that this email offered proof to support the dismissal of the lien Pearson had obtained. Tillman

13

later filed a second motion to admit additional evidence, seeking to introduce a letter from the pastor of the church she alleged she was employed at in 2018. She alleged that she could not admit this evidence "at an evidentiary hearing because claimant had no evidentiary hearing" but claimed that this letter would help show that she did try to work after her employment with Home Depot ended.

¶24.    Also on June 27, 2022, Tillman filed a motion to dismiss Pearson's lien, alleging he breached their contract, threatened to quit, and waived his fees on a phone call with her. That same day, she also filed a motion to dismiss Jay Foster's lien. Tillman argued for dismissal on the grounds that Foster breached his contract with her, presented false charges, and made a false statement that Tillman fired him.

¶25.    On July 28, 2022, Home Depot filed a response opposing Tillman's motion to admit additional evidence. According to Home Depot, the document she sought to introduce was not only unauthenticated and based on an undecipherable provider's signature, but the document also reflected an encounter date of June 10, 2016, and thus existed at the time of the merits hearing. Home Depot argued that Tillman's motion violated procedural rules because she did not introduce this existing document at the time of the hearing as required, and she did not give the requisite explanation by stating with particularity any reason for her failure to introduce this document at the hearing.[4]

---

[4] Pursuant to Procedural Rule 2.7 of the Mississippi Workers' Compensation Commission, all documentary evidence "shall be introduced at the hearing"; however, Tillman did not introduce this document at the hearing before the AJ. Under Procedural Rule 2.9, when seeking to introduce evidence after the hearing, the motion must state with particularity the reason the evidence was not introduced at the time of the hearing.

¶26. The Commission subsequently took Tillman's petition for review of the AJ's order under consideration on August 15, 2022. The Commission implicitly adopted the AJ's findings of fact, without making its own, and affirmed the AJ's order denying both of Tillman's claims for workers' compensation. In its order, the Commission also reviewed Tillman's motion to admit additional evidence and determined that the evidence she submitted did not meet the standard for admission under Procedural Rule 2.9. Procedural rules aside, the Commission further concluded that the additional evidence submitted by Tillman would not have affected the outcome of her case. Additionally, the Commission's order denied Tillman's two motions to dismiss the liens filed by her former attorneys. Thereafter, Tillman filed a notice of appeal from the Commission's order on August 30, 2022.

**STANDARD OF REVIEW**

¶27. "[A]ppellate review in a workers' compensation case is limited to determining whether the Commission's decision was supported by substantial evidence, was arbitrary and capricious, was beyond the scope or power of the agency to make, or violated the claimant's constitutional or statutory rights." *Hawthorne v. Miss. State Hosp.*, 370 So. 3d 206, 211 (¶25) (Miss. Ct. App. 2023) (quoting *Jones v. Univ. of Miss. Med. Ctr.*, 309 So. 3d 1135, 1142 (¶33) (Miss. Ct. App. 2021)).

¶28. Where "the Commission's order affirmed the AJ's order without additional analysis [and] . . . adopt[ed] the findings of the AJ without presenting its own findings of fact, this Court will examine the findings of fact made by the AJ." *Mabus v. Mueller Indus. Inc.*, 205

15

So. 3d 677, 682 (¶21) (Miss. Ct. App. 2016) (citing *Leslie v. SAIA Motor Freight*, 970 So. 2d 218, 220 (¶11) (Miss. Ct. App. 2007)). Simply put, "this Court reviews [the AJ's] findings and conclusions as those of the Commission." *Prairie Farms Dairy v. Graham*, 270 So. 3d 37, 41 (¶10) (Miss. Ct. App. 2018) (quoting *Pruitt v. Howard Indus. Inc.*, 232 So. 3d 822, 825 (¶7) (Miss. Ct. App. 2017)).

¶29. In a workers' compensation case, "the Commission is the fact-finder and the judge of the credibility of witnesses[,]" and as such, "[n]o court can reweigh the evidence." *Barnes v. LFI Fort Pierce Inc.*, 238 So. 3d 7, 10 (¶11) (Miss. Ct. App. 2018) (quoting *Langley v. Waddle Trucking LLC*, 206 So. 3d 1262, 1263-64 (¶3) (Miss. Ct. App. 2016)). This Court "review[s] the facts on appeal not with an eye toward determining how we would resolve the factual issues were we the triers of the fact; rather, our function is to determine whether there is substantial credible evidence which would support the factual determination made by the Commission." *Hawthorne*, 370 So. 3d at 211 (¶25) (quoting *Jones*, 309 So. 3d at 1142 (¶33)). "Substantial evidence consists of sufficient evidence for reasonable minds to accept as adequate to support the Commission's conclusion." *Bowdry v. City of Tupelo*, 337 So. 3d 1158, 1163 (¶12) (Miss. Ct. App. 2022) (quoting *Sheffield v. S.J. Louis Constr. Inc.*, 285 So. 3d 614, 618 (¶8) (Miss. 2019)).

## ISSUES

¶30. The issues before this Court on appeal are as follows:

(1) Whether the evidence presented by Tillman at the merits hearing was improperly excluded from the evidentiary record;

(2) Whether Tillman is entitled to workers' compensation benefits for a

16

work-related injury from January 2016;

(3)     Whether Tillman is entitled to workers' compensation benefits for alleged injuries from an incident at work in March 2016;

(4)     Whether denying her motions to dismiss liens from former attorneys was error.

## DISCUSSION

### I.     Exclusion of Exhibits Tillman Submitted

¶31.     We first address Tillman's arguments regarding the exclusion of her exhibits from the evidence. On appeal, Tillman argues that the AJ abused her discretion by placing Tillman's evidence in the record for identification only and not entering them into evidence. She asserts that the preclusion of her exhibits from the record and from the AJ's consideration violated her rights, the Mississippi Rules of Evidence, and the "Disability Act." She further alleges that the AJ's ruling "preventing claimant's probative relevant evidence out of the records after submitting them during a hearing is an egregious act and prevents the claimant['s] right to a fair hearing." Her appellate briefs recite details from the exhibits that were deemed procedurally inadmissible and excluded from evidence.

¶32.     At the merits hearing in October 2021, Tillman presented the AJ with a composite exhibit she sought to introduce as evidence. Her exhibit was a compilation of documents that she alleged consisted of email communications, notes from physicians, records from doctor appointments, medical bills, incident reports, and timesheets from work. Home Depot did not object to submitting into evidence the email communications between Tillman and the Carrier, the time sheets of her hours worked, or the incident reports from both accidents.

However, Home Depot did object to the remaining documents on the ground that Tillman failed to follow the required procedures for medical records. The AJ sustained the objection, finding that none of the documents compiled by Tillman were offered with the requisite affidavits attesting that the records are true and correct copies of medical records received by Tillman from each physician or medical practice.

¶33. "Due process dictates that the Commission is to follow its own procedural due process principles in conducting its duties of administering workers' compensation claims." *Robinson Prop. Grp. Ltd. P'ship v. Newton*, 975 So. 2d 256, 260 (¶8) (Miss. Ct. App. 2007). Pursuant to Procedural Rule 2.9, before a party can introduce medical records into evidence in lieu of direct testimony, the party offering the records must attach an affidavit with a sworn statement that the records are a true, correct, and complete copy of the records received from the medical provider. "Exhibits offered for introduction into evidence but excluded by the administrative judge will be marked for identification only and included in the record of the claim for purposes of administrative and/or judicial review." John R. Bradley & Linda A. Thompson, *Procedure in Hearings on the Merits*, Mississippi Workers' Comp. § 6:33 (updated Aug. 2023) (citing *Mabus v. Mueller Indus.*, 310 So. 3d 1192, 1202 (¶31) (Miss. Ct. App. 2020) (affirming where administrative judge rejected medical records that had been considered at a prior hearing)). Tillman was required to follow the provisions of Procedural Rule 2.9 to submit her medical records into evidence for more than mere identification, and because she failed to do so, it was not error to exclude them.

## II. January 2016 Injury: Appeal No. 2022-WC-00905-COA

¶34.    The classification of Tillman's January 2016 injuries as work-related is not in dispute;

Home Depot concedes that she suffered a work-related injury. The question here is whether

Tillman's injuries entitle her to any workers' compensation benefits in addition to the

medical treatment Home Depot already voluntarily paid for her. More specifically, Tillman

claims that she suffered compensable injuries and is owed payment for temporary and

permanent disability benefits because she missed work and is still recovering. She also claims

that she is entitled to receive further medical treatment because she continues to have pain

from her injury and that she has a statutory right to her choice of physician.

### A.    Temporary and Permanent Disability Benefits

¶35.    The claimant's "injury must rise to the level of a disability before it is compensable"

under workers' compensation law. *Duren v. Effex Mgmt. Sols. LLC*, 342 So. 3d 481, 489

(¶34) (Miss. Ct. App. 2022). Under workers' compensation law, "claimants have 'the burden

of proving disability and the extent thereof.'" *Mabus*, 205 So. 3d at 682 (¶23) (quoting *Smith*

*v. Johnston Tombigbee Furniture Mfg. Co.*, 43 So. 3d 1159, 1165 (¶21) (Miss. Ct. App.

2010)).[5] "The trier of fact must determine whether the claimant has made out a prima facie

case based on the evidence presented." *Lott v. Hudspeth Ctr.*, 26 So. 3d 1044, 1048 (¶13)

(Miss. 2010).

¶36.    "In the workers' compensation context, 'disability' is defined as the 'incapacity

because of injury to earn the wages which the employee was receiving at the time of injury

---

[5] The "claimant bears 'the general burden of proof to establish every essential element of her claim, and it is not sufficient to leave the matter to surmise, conjecture or speculation.'" *West v. Nichols Ctr.*, 369 So. 3d 110, 114 (¶21) (Miss. Ct. App. 2023) (quoting *Narkeeta Inc. v. McCoy*, 247 Miss. 65, 69, 153 So. 2d 798, 800 (1963)).

in the same or other employment, which incapacity and the extent thereof *must be supported by medical findings*.'" *Delphi Packard Elec. Sys. v. Brown*, 6 So. 3d 1091, 1095 (¶20) (Miss. Ct. App. 2008) (emphasis added) (quoting Miss. Code Ann. § 71-3-3(i) (Rev. 2000)). To assess "the extent of [Tillman's] disability in the case before us, 'this Court must look to the medical evidence.'" *Duren*, 342 So. 3d at 489 (¶34) (quoting *Mabus*, 205 So. 3d at 683 (¶25)). But again, we may "only consider[] the medical evidence properly admitted before the AJ and Commission." *Id*. at 499 (¶85) (quoting *Mabus*, 205 So. 3d at 683 (¶28)).

### 1. Temporary Disability

¶37. The Mississippi Workers' Compensation Act "categorizes disabilities by duration as either temporary or permanent[.]" *Flowers v. Crown Cork & Seal USA Inc.*, 167 So. 3d 188, 191 (¶12) (Miss. 2014) (citing Miss. Code Ann. 71-3-17 (Supp. 2013)). "Temporary disability . . . refer[s] to the healing period following injury until such time as the employee reaches the maximum benefit from medical treatment." *Duren*, 342 So. 3d at 495 (¶63) (quoting *Flowers*, 167 So. 3d at 191 (¶12)); *see also Arender v. Nat'l Sales Inc.*, 193 So. 2d 579, 587 (Miss. 1966) (explaining on rehearing that payments for temporary disability extend only during continuance of "disability" and/or until MMI);[6] *see also Mid-South Packers Inc. v. Hanson*, 253 Miss. 703, 178 So. 2d 689, 691 (1965) (affirming that no benefits were due during temporary period while claimant was working and earning full pay).

---

[6] "Maximum medical improvement is reached at such time as the patient reaches the maximum benefit from medical treatment or is as far restored as the permanent character of his injuries will permit and/or the current limits of medical science will permit[.]" *Seals v. Pearl River Resort*, 363 So. 3d 954, 958 (¶13) (Miss. Ct. App. 2019) (quoting Mississippi Workers' Compensation Medical Fee Schedule 8, § VI (2016)), *aff'd in part & rev'd in part on other grounds*, 301 So. 3d 585 (Miss. 2020).

¶38.    Tillman had the burden of proof at the merits hearing to show that her January 2016 work-related injury caused a disability. The properly admitted medical evidence from Dr. Cannon showed that he determined Tillman had reached the maximum benefit from medical treatment for her January 2016 injury as of October 26, 2016. The records indicated that Dr. Cannon found no medical basis for the symptoms Tillman continued to allege and, thus, no further medical treatment to be necessary. Dr. McGuire's medical reports show he agreed with Dr. Cannon's findings and placed her at MMI as of October 26, 2016, as well. As such, she would have been considered in temporary status from January 15, 2016, the date of her injury, until October 26, 2016, the date of MMI.

¶39.    But to rise to the level of a temporary disability for the purposes of benefits compensation, Tillman had to prove that she suffered a loss of wage-earning capacity during this period. The medical records from Dr. Cannon show that he released her with light-duty work restrictions on March 17, 2016, which continued until he placed her at MMI. The evidence indicated Home Depot accommodated her restrictions. The wage statement submitted by Home Depot showed that Tillman continued to work on a regular basis until October 2016 without missing work on account of her injury. Importantly, the statement also indicated that her hourly wage increased over the course of the time between January 2016 and October 2016. The only evidence Tillman presented that was admitted into the record was self-serving testimony that she missed what she thought was about a month of work and a timesheet she alleged showed the days she was not at work. However, none of the evidence she offered medically connected her absences on specific days to her work-related injury.

21

¶40. Consequently, even though she was in recovery from her work-related injury from a medical standpoint, she was working and not suffering any loss of wages during this period. As such, we find substantial evidence supported the Commission's determination that there was no proof for an award of temporary disability benefits resulting from her January 2016 injury.

## 2. Permanent Disability

¶41. After a claimant "reaches the [point of] maximum benefit from medical treatment[,] . . . 'any lingering disability is considered permanent." *Flowers*, 167 So. 3d at 191 (¶12). But before a work-related injury may be deemed a *permanent disability*, the "claimant must prove (1) a medical impairment[] and (2) [that] 'the medical impairment resulted in a loss of wage-earning capacity.'" *Hanson v. Dolgencorp Inc.*, 150 So. 3d 146, 148-49 (¶10) (Miss. Ct. App. 2014) (quoting *Robinson v. Packard Elec. Div., Gen. Motors Corp.*, 523 So. 2d 329, 331 (Miss. 1988)). Furthermore, "the fact that a claimant is not restored to the same physical condition he exhibited before an injury is *not* sufficient to find a permanent . . . disability; rather, there needs to be an 'incapacity because of injury to earn . . . wages[.]'" *Clements v. Welling Truck Serv. Inc.*, 739 So. 2d 476, 480 (¶14) (Miss. Ct. App. 1999) (emphasis added) (quoting *Jordan v. Hercules Inc.*, 600 So. 2d 179, 183 (Miss. 1992)).

¶42. Tillman claims that she suffers from a permanent disability, maintaining that after Dr. Cannon put her at MMI, she continued to have issues and pain and, thus, has a "lingering disability" considered permanent. However, workers' compensation law requires Tillman to

22

prove with medical evidence that she has a medical impairment or permanent work restrictions and that the impairment or restrictions caused her to be incapacitated to earn wages.[7]

¶43.    Dr. Cannon placed Tillman at MMI and released her to full-duty work on October 26, 2016. The medical records show that Dr. Cannon and Dr. McGuire found that there was no medical evidence to support any impairment rating or any permanent work restrictions. Therefore, according to the evidence in the records before this Court, Tillman was released to full-duty work without any existing medical incapacity impacting her ability to earn wages.

¶44.    After Tillman was released to full-duty work by Dr. Cannon, she did not return to her job at Home Depot. She testified that she chose not to go back to work because she disagreed with Dr. Cannon's assessment and was still in pain and having issues with her injury. Furthermore, she testified at the hearing that she has not looked for other work since leaving Home Depot. Although she later contradicted her own assertion before the Commission and on appeal, she also testified she had no intention of looking for another job because she was still suffering from her injury, and another doctor had released her from work indefinitely. However, Tillman did not offer any admissible medical evidence to support her claim that another doctor released her due to her work-related injury. Nor did she provide admissible evidence from any other medical provider to dispute Dr. Cannon's and Dr. McGuire's

---

[7] Furthermore, "[w]e recognize that 'subjective complaints of debilitating pain unsupported by any medical proof of an underlying physical cause may, if found credible by the finders of fact, support a claim for disability.' However, the AJ did not find [Tillman's] subjective complaints of pain to be credible." *Duren*, 342 So. 3d at 493 (¶55) (citation omitted) (quoting *Wagner v. Hancock Med. Ctr.*, 825 So. 2d 703, 706 (¶11) (Miss. Ct. App. 2002)).

23

assessments that she reached MMI and had no impairment or restrictions.

¶45.    Therefore, we find substantial evidence to support the Commission's determination that Tillman failed to prove the existence of a permanent disability resulting from her January 2016 work-related injury, and failed to prove she is entitled to any permanent disability benefits.

### B.    Choice of Physician

¶46.    Tillman also asserted that under the workers' compensation statutes, she is entitled to further medical treatment from a physician of her choice. She argues that she made a request to Home Depot's insurance carrier for her choice of physician, but was only allowed to see Dr. Cannon who was Home Depot's choice of physician. Thus, Tillman asserts that her treatment is ongoing and requests that the insurance carrier allow her to seek other treatment from a physician of her choice (Dr. Ying Xu).

¶47.    Mississippi Code Annotated section 71-3-15(1) contains a provision allowing an injured employee to select a physician of her own choosing. But the statute also stipulates,

> However, if the employee is treated for his alleged work-related injury or occupational disease by a physician *for six (6) months or longer*, or if the employee has surgery for the alleged work-related injury or occupational disease performed by a physician, then that physician shall be deemed the employee's selection.

Miss. Code Ann. § 71-3-15(1) (Rev. 2021) (emphasis added).

¶48.    In this case, after her injury occurred, Tillman testified that between the period of January 16, 2016, and March 17, 2016, she sought medical treatment from Methodist Hospital in Olive Branch, the Baptist Minor Medical Center, the Byhalia Clinic, and the

24

Family Medical Center. Only after Tillman had chosen to go to these four other medical providers did she then pursue treatment from Dr. Cannon. Notably, she stated that she had been referred to Dr. Cannon later on by Baptist Minor Medical Center, which was one of her originally chosen providers. The evidence in this case shows that Dr. Cannon treated Tillman for her injuries from March 17, 2016, through October 26, 2016. As the AJ found, this span was greater than six months. Thus, Dr. Cannon treated her work-related injury for the statutory six-month period and "shall be deemed the employee's selection." Miss. Code Ann. § 71-3-15. Therefore, we find substantial evidence supported the Commission's determination that Tillman's treatment complied with the statutory requirements.

### III. March 2016 Injury: Appeal No. 2022-WC-00894-COA

¶49. The next issue is whether Tillman was entitled to workers' compensation benefits for alleged injuries resulting from the incident in March 2016. At the merits hearing, Home Depot denied that Tillman's March 2016 incident resulted in any work-related injuries. Tillman's appeal claims that she suffered a compensable work-related injury to her neck and upper right extremity.

¶50. "A compensable injury is one 'arising out of and in the course of employment without regard to fault which results from an untoward event or events, if contributed to or aggravated or accelerated by the employment in a significant manner.'" *Howard Indus. Inc. v. Robinson*, 846 So. 2d 245, 251 (¶14) (Miss. Ct. App. 2002) (quoting Miss. Code Ann. § 71-3-3(b) (Rev. 2000)); *cf. Flowers*, 167 So. 3d at 193 (¶16) (stating only "[a]n employee injured in the course *and scope* of his or her employment is entitled to compensation"

25

(emphasis added)).

¶51.    Simply put, before a claimant is entitled to workers' compensation benefits, the claimant must have suffered an injury related to the employment. Contrary to Tillman's assertion, it is not sufficient that injuries simply arose at the claimant's place of employment during working hours. Unlike her January 2016 injuries when Tillman was engaged in helping a customer load tiles onto a cart, the circumstances presented in her March 2016 incident report showed she was merely walking across the floor and was not engaged in any activity when she felt pressure and a pop in her back. Rather, she claims she suddenly felt something internally that was not brought on by any external factors other than walking.

¶52.    Tillman did not present any medical proof to support her claims that her neck and arm pain were in any way related to the incident she reported from March 2016. On the contrary, there was evidence provided through Dr. Cannon's medical reports that specifically show he found her alleged neck and right extremity symptoms were not related to the reported circumstance of standing on hard concrete at work. Dr. Cannon's medical records indicated he found only degenerative changes in her test results and did not find any medical basis to explain her alleged symptoms.

¶53.    As a result, we find substantial evidence supported the Commission's order determining that Tillman did not meet her burden of proof for a compensable injury and denying Tillman any disability benefits from the March 2016 incident.

## IV.    Denial of Motions to Dismiss Liens

¶54.    Tillman's last claim on appeal is that the Commission erred by denying her motions

to dismiss two liens filed against her by two of her former attorneys. She argues that the lien filed by Keith Pearson and the lien filed by Jay Foster should have both been dismissed for breach of contract and violation of the Mississippi Rules of Professional Conduct. She alleges that Pearson was threatening to leave her without counsel and that Foster filed some false charges, terminated himself, and then misled the AJ to believe that she terminated him. However, Tillman fails to cite authority to support the position she takes.

¶55.    "Our caselaw clearly provides that the failure to cite supporting legal authority precludes consideration of an issue on appeal." *Green v. Green*, 349 So. 3d 1187, 1200 (¶47) (Miss. Ct. App. 2022) (quoting *Hardin v. Hardin*, 335 So. 3d 1088, 1094 (¶21) (Miss. Ct. App. 2022)); *accord* M.R.A.P. 28(a)(7). Tillman has been proceeding pro se in this case, and "[w]hile pro se litigants are afforded some leniency, they 'must be held to substantially the same standards of litigation conduct as members of the bar.'" *Id.* (quoting *Dobbs v. Crawford*, 177 So. 3d 448, 452 (¶13) (Miss. Ct. App. 2015)). "Even a pro se litigant is held to the same procedural and evidentiary requirements as individuals represented by counsel." *Id.* (quoting *Robinson v. Newsome*, 88 So. 3d 767, 769 (¶4) (Miss. Ct. App. 2011)). Nowhere in her multiple briefs does Tillman raise any legal authority to support her claims that the Commission erred. Accordingly, we find that she has waived our consideration of any argument she presents on appeal concerning the denial of her motions to dismiss the liens of her former attorneys.

## CONCLUSION

¶56.    The AJ properly excluded the exhibits and additional evidence Tillman presented

because she did not follow the requirements for admission of medical evidence and documentation. Because the record showed that sufficient evidence supported denying Tillman any further workers' compensation benefits for her January 2016 injuries and supported denying Tillman any benefits for her alleged March 2016 injuries, we find no error in the Commission's order and therefore affirm. We deny all other relief Tillman requests on appeal.

¶57. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.**